## 68279. THE STATE v. GOLDEN.

BANKE, Presiding Judge.

Based on the results of several "field sobriety tests" administered to him when his automobile was stopped at a roadblock set up by the Marietta-Cobb County DUI Task Force, the defendant was charged with driving under the influence of alcohol. The trial court granted his motion to suppress the results of these tests, ruling that his detention at the roadblock constituted a violation of his Fourth Amendment rights. The state appeals.

The Marietta-Cobb County DUI Task Force is comprised of officers from various police jurisdictions within Cobb County. Each

such officer is deputized to act as an agent of the sheriff's department, in an effort to give him or her county-wide arrest powers. The roadblock at issue in this case was implemented by seven task force officers, on a state highway within the city limits of Powder Springs, between the hours of midnight and 3:00 a.m. A supervisory officer charged with overall responsibility for the operation and described as the "project coordinator" testified that he chose this time period because traffic was light and a greater incidence of DUI offenses could normally be expected during such hours.

Reflecting signs were placed at each approach to the roadblock, identifying the operation as a driver's license checkpoint and requesting motorists to produce their driver's licenses and insurance cards for inspection. The checkpoint was also identified by orange, iridescent traffic cones placed in the roadway and by a patrol car stationed beside the road with its emergency lights flashing. A "chase vehicle" was present to apprehend any drivers who might attempt to avoid stopping.

As each passing motorist reached the checkpoint, one of two designated "screening officers" checked his drivers' license, insurance card, and automobile tag for possible irregularities. The screening officers were also instructed to observe each driver for signs of intoxication. If a possible offense was observed, the screening officer noted it on a pre-printed form and asked the driver to pull into an adjacent parking lot, where a "receiving officer" made a determination as to whether the driver should be charged with the offense. In the case of suspected intoxication, this involved ordering the driver out of the vehicle and asking him to submit to a series of "field sobriety tests." Based on the results of these tests, the suspect was then either placed under formal arrest for DUI or allowed to continue on his way. If placed under arrest for DUI, he was transferred to the custody of other officers and asked to consent to a breathalyzer test under the "implied consent" law.

The field sobriety tests were five in number. The suspect was asked to state the time and date, recite the alphabet, touch the index finger of each hand to his nose with eyes closed, follow the movement of an object with his eyes while holding his head still, and blow into an "alco-sensor," which was described as a miniature, "pre-screening" breathalyzer.

The screening officer who confronted the defendant in this case testified that it appeared the defendant might be intoxicated because he was slow to locate his driver's license and insurance card, he emanated a strong odor of alcoholic beverage, his eyes were red and watery, and he admitted having had something to drink. However, both the screening officer and the receiving officer testified that they did not consider their initial observations of the defendant sufficient to

establish probable cause for his arrest for DUI. Although the receiving officer testified that the defendant "agreed" to take the field tests, it is clear from other evidence that any driver who declined to take the tests upon request would have been arrested for DUI immediately. *Held*:

1. The state initially enumerates as error the trial court's alleged finding that the task force officers lacked authority to operate a roadblock within the city limits of Powder Springs. However, the order granting the motion to suppress contains no such finding but is instead based solely on Fourth Amendment considerations. Consequently, we do not address this enumeration of error.

2. The trial court concluded that because no specific guidelines existed for use in deciding which motorists should be evaluated for intoxication, the screening officers were allowed to exercise an unconstitutionally excessive amount of discretion in this regard. This determination was evidently based on Delaware v. Prouse, 440 U. S. 648 (99 SC 1391, 59 LE2d 660) (1979), wherein the United States Supreme Court held that patrolmen may not stop motorists at random to inspect their driver's licenses and vehicle registration papers, absent some specific, articulable suspicion of wrongdoing. It is clear, however, that the holding in Prouse was not intended as a prohibition against the utilization of highway roadblocks to conduct such inspections, for the Supreme Court specifically indicated in that opinion that roadblocks could be considered a valid alternative to random vehicle stops. Id. at 663. The Supreme Court has also indicated on other occasions that checkpoint stops are to be viewed differently from isolated vehicle stops "because the subjective intrusion — the generating of concern or even fright on the part of lawful travelers — is appreciably less in the case of a checkpoint stop." United States v. Martinez-Fuerte, 428 U. S. 543, 558 (96 SC 3074, 49 LE2d 1116) (1976). See also United States v. Ortiz, 442 U. S. 891, 894-895 (95 SC 2585, 45 LE2d 623, 628) (1975). The use of highway roadblocks for the purpose of checking driver's licenses and vehicle registrations has also been upheld by the appellate courts of this state. See *State v. Swift*, 232 Ga. 535 (1) (207 SE2d 459) (1974); *State v. Roberson*, 165 Ga. App. 727 (1) (302 SE2d 591) (1983).

The decision to implement the roadblock at issue in this case was made by supervisory personnel rather than by the officers in the field, and the operation was carried out pursuant to specific, pre-arranged procedures requiring all passing vehicles to be stopped at the checkpoint and leaving no discretion to the officers in this regard. It is clear that the delay experienced by passing motorists was minimal, lasting only a minute or two unless a violation was noted, and that the operation was well identified as a police checkpoint. Taking all of these factors into consideration, we hold that the initial detention of the

defendant at the roadblock was reasonable and resulted in no violation of his Fourth Amendment rights.[1] In addition, we find that the screening officer's experience and training, which included 2-½ years of police service and attendance at a DUI enforcement school operated by the North Georgia Police Academy, were amply sufficient to enable him to make an initial determination as to which motorists should be given the field tests for intoxication. Indeed, it is the rule in Georgia that any person may testify, on the basis of personal observation, as to whether another person did or did not appear to be intoxicated on a given occasion. See *Jones v. State*, 168 Ga. App. 106 (308 SE2d 209) (1983); *Garrett v. State*, 146 Ga. App. 610 (1) (247 SE2d 136) (1978).

3. We must also disagree with the trial court's conclusion that the secondary detention of the defendant for the purpose of administering the field sobriety tests was unlawful. It is well established that the police may "seize" an individual for a brief period of time without probable cause to make an arrest, provided there exists a reasonable and articulable suspicion that the person is involved in criminal activity. See Terry v. Ohio, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968). The purpose of such a detention is to maintain the status quo while investigating the circumstances which give rise to the suspicion of criminal wrongdoing. See Adams v. Williams, 407 U. S. 143, 146 (92 SC 1921, 32 LE2d 612) (1972); *Radowick v. State*, 145 Ga. App. 231, 233 (244 SE2d 346) (1978). The validity of an officer's investigative or protective conduct upon making a "Terry stop" is determined in each case by balancing the extent of the intrusion against the immediacy and importance of the interest in crime prevention or law enforcement which is sought to be advanced. See Michigan v. Long, ___ U. S. ___ (103 SC 3469, 77 LE2d 1201, 1221, 51 LW 5231, 5235-5237) (1983). See also Brown v. Texas, 443 U. S. 47, 50-51 (99 SC 2637, 61 LE2d 357) (1979); United States v. Brignoni-Ponce, 422 U. S. 873, 878 (95 SC 2574, 45 LE2d 607) (1975); Delaware v. Prouse, supra, 440

---

[1] Numerous other jurisdictions which have considered the constitutionality of DUI roadblocks have adopted a similar analysis. See State v. Deskins, 673 P2d 1174 (Kan. 1983); Kinslow v. Commonwealth, 660 SW2d 677 (Ky. App. 1983); State v. Coccomo, 177 N.J. Super. 575 (427 A2d 131) (1980); United States v. Prichard, 645 F2d 854 (10th Cir. 1981). Cf. Commonwealth v. McGeoghegan, 389 Mass. 137 (449 NE2d 349) (1983) (wherein the roadblock was held unlawful due to the state's failure to establish the existence of adequate police presence, lighting, and warning to approaching motorists and to prove that motorists were not subjected to arbitrariness and undue delay); Koonce v. State, 651 SW2d 46 (Tex. App. 1983) (wherein the defendant's motion to suppress was granted due to the state's failure to prove the substance of the departmental procedures employed in conducting the roadblock).

On the other hand, some jurisdictions which have considered the issue have found the use of such roadblocks to be unconstitutional per se. See State v. Smith, 674 P2d 562 (Okla. App. 1984); State ex rel. Ekstrom v. Justice Court, 663 P2d 992 (Ariz. 1983); State v. Olgaard, 248 NW2d 392 (S.D. 1976).

U. S. at 654. To pass constitutional muster, the intrusion must be confined to what is "minimally necessary" under the circumstances and it must not be extensive or prolonged. See Terry v. Ohio, supra, 392 U. S. at 30; *Radowick v. State,* supra, 145 Ga. App. at 238.

Based on their own personal observations, the officers in the case before us obviously had reasonable and articulable grounds to believe that the defendant might be intoxicated. Given the enormous danger to the public created by the presence of drunk drivers on the roadways, it follows that the officers were justified in attempting to obtain more information concerning his condition before allowing him to continue on his way. Furthermore, given the fact that the defendant had already been momentarily detained at the roadblock, the brief additional intrusion occasioned by asking him to get out of his vehicle to submit to the field sobriety tests must be considered minimal. Compare *Bowers v. State,* 151 Ga. App. 46 (258 SE2d 623) (1979), aff'd 245 Ga. 367 (265 SE2d 57) (1980); *Radowick v. State,* supra. Balancing the state's interest in enforcing its drunk driving laws against the individual's right to be free from unwarranted governmental intrusion into his affairs, we thus hold that the administration of the tests did not violate the defendant's Fourth Amendment rights. Accord *State v. Roberson,* supra. The order granting the defendant's motion to suppress is accordingly reversed.[2]

*Judgment reversed. Pope and Benham, JJ., concur.*

DECIDED MAY 1, 1984 —
REHEARING DENIED MAY 17, 1984 —

*Herbert A. Rivers, Solicitor, William D. Cooper, Assistant Solicitor,* for appellant.
*Larry W. Yarbrough,* for appellee.

---

[2] The Colorado Supreme Court, apparently the only other court in the nation to consider this precise issue, recently reached a contrary conclusion in People v. Carlson, ___ Colo. ___ (52 LW 2465, decided Jan. 30, 1984), wherein it held that a roadside sobriety test may not be constitutionally administered unless there is already probable cause to arrest the driver for DUI or the driver voluntarily consents to perform the test.