S97A1814. LaFONTAINE v. THE STATE.
(497 SE2d 367)

HUNSTEIN, Justice.

Stephen LaFontaine was convicted of violating OCGA § 40-6-391 (a) (5), the per se offense of operating a moving vehicle while having an unlawful blood alcohol level. On appeal, LaFontaine claims the roadblock which led to his arrest violated the Fourth Amendment to the United States Constitution, that OCGA § 40-6-391 (a) (5) is unconstitutional, and that his challenge to the traffic citation should have been sustained. We conclude that no error occurred and affirm.

1. LaFontaine's challenge to the constitutionality of OCGA § 40-6-391 (a) (5) is of no avail as this Court has recently upheld the con-

stitutionality of that statute against the challenges raised in his appeal. See *Bohannon v. State*, 269 Ga. 130 (497 SE2d 552) (1998).

2. LaFontaine's challenge to the admissibility of the blood test results on the ground that the testing procedures have not been properly approved under the Administrative Procedures Act is without merit as that issue was decided adversely to him in *Price v. State*, 269 Ga. 222 (498 SE2d 262) (1998).

3. T. J. Jackson, a Georgia State Patrol trooper, testified that on the morning of October 22, 1996, he and a fellow officer conducted a roadblock on Old Atlanta Road in Forsyth County for the purpose of examining the driver's licenses and proof of insurance of all vehicles traveling on that roadway as well as to check for other violations of Georgia law. The decision to implement the roadblock was made by a State Patrol supervisor, although the determination as to the location of the roadblock was made by the field officers. Trooper Jackson testified that the determination as to the location of a roadblock is often based on factors such as a high number of complaints about traffic violations on a particular road. Without exception and pursuant to standard operating procedure, on the day in question the troopers checked the insurance and licenses of every driver that approached the roadblock. When LaFontaine arrived at the roadblock, Trooper Jackson detected a strong odor of alcohol and observed that LaFontaine's face was flushed and his eyes bloodshot. When questioned about his use of alcohol, LaFontaine informed the trooper that he had been drinking until about 4:00 a.m., but had not had anything to drink since that time. After failing field sobriety tests, LaFontaine was taken to a hospital for a blood test; the test yielded a blood-alcohol content of 0.11 grams and LaFontaine was issued a Uniform Traffic Citation.

In examining the propriety of roadblock stops, the issue for resolution is not whether there was probable cause to stop the vehicle, but whether the roadblock stop was otherwise implemented and conducted in a manner as to demonstrate that the stop of the vehicle was "reasonable" under the Fourth Amendment. *Michigan Dept. of State Police v. Sitz*, 496 U. S. 444, 450 (110 SC 2481, 110 LE2d 412) (1990). See *Christopher v. State*, 202 Ga. App. 40 (1) (413 SE2d 236) (1991).

"It has been held that police officials may set up highway roadblocks for the purpose of requiring motorists to display their driver's license, and that such a practice does not invade their right to use the public ways free from unreasonable and unwarranted interception. Nor does such a practice constitute an unlawful arrest or restraint or an illegal search contrary to the United States Constitution." [Cit.] "The [S]tate can practice preventative therapy by reason-

able road checks to ascertain whether man and machine meet the legislative determination of fitness . . . ." [Cits.]

*State v. Swift*, 232 Ga. 535-536 (1) (207 SE2d 459) (1974). Although a roadblock cannot be used as a subterfuge to detain citizens for the purpose of searching their automobiles, a momentary stop of a traveling citizen to perform the license checks or to check the present fitness of a car or driver for further driving is permissible. Id.; *Brisbane v. State*, 233 Ga. 339, 343-344 (211 SE2d 294) (1974). Roadblock stops have appreciably less intrusion on the part of travelers and do not create the fear and surprise engendered in motorists by roving patrol stops because the motorist is not singled out; the traveler is reassured when all vehicles are stopped. *Sitz*, supra at 452-453.

We conclude under the circumstances of this case that the roadblock set up primarily as a means to perform routine traffic checks was valid. *State v. Golden*, 171 Ga. App. 27 (318 SE2d 693) (1984), articulates specific factors to determine when a roadblock is satisfactory. A roadblock is satisfactory where the decision to implement the roadblock was made by supervisory personnel rather than the officers in the field; all vehicles are stopped as opposed to random vehicle stops; the delay to motorists is minimal; the roadblock operation is well identified as a police checkpoint; and the "screening" officer's training and experience is sufficient to qualify him to make an initial determination as to which motorists should be given field tests for intoxication. Id. at 29-30. Applying *Golden* to the facts of this case it is clear that the roadblock was satisfactory. The roadblock was established and implemented by supervisory personnel and although field troopers were given limited decision making authority where to place the roadblock, their discretion was clearly minimal.

We therefore conclude that the trial court properly denied LaFontaine's motion to suppress because there is no evidence of unfettered discretion by the field troopers and LaFontaine made no showing that the roadblock was arbitrary or oppressive to motorists. LaFontaine's arrest was not the result of a State trooper's whimsical decision to stop only his vehicle or an arbitrary scheme to single him out. See *Christopher*, supra at (1); *Mims v. State*, 201 Ga. App. 277 (2) (410 SE2d 824) (1991). The stop was made within the constitutional confines of a routine motorist roadblock on Old Atlanta Road and LaFontaine's ensuing arrest was the result of his personal decision to operate a motor vehicle while in an intoxicated state.

4. Prior to his non-jury trial, LaFontaine filed a general demurrer to the sufficiency of the traffic citation on the ground that it failed to inform him of the specific conduct and statutory provisions allegedly violated by him. The citation alleged the crime committed was a violation of OCGA § 40-6-391. LaFontaine was found guilty by the

trial judge of a violation of OCGA § 40-6-391 (a) (5) (existence of alcohol concentration per se violation) and not guilty of any violation of OCGA § 40-6-391 (a) (1) (under the influence to the extent it is less safe to drive). The trial transcript shows that although LaFontaine filed his demurrer prior to trial, he failed to obtain a ruling on it until after the trial had commenced. As a result, the trial court correctly held that LaFontaine had waived his right to challenge the citation. *Andrew v. State*, 216 Ga. App. 819, 820 (456 SE2d 227) (1995); *Dean v. State*, 214 Ga. App. 768, 770 (449 SE2d 158) (1994). See generally OCGA § 17-7-111.

*Judgment affirmed. All the Justices concur, except Benham, C. J., Fletcher, P. J., and Sears, J., who dissent.*

SEARS, Justice, concurring in part and dissenting in part.

If the Fourth Amendment to the United States Constitution means anything at all it means that field officers have no business arbitrarily and indiscriminately stopping people from traversing our public roads. The Fourth Amendment's concerns — to protect citizens from arbitrary and unreasonable intrusions by the State — can easily be satisfied by requiring that roadblocks be established only with systematic supervisory control. Without such extensive control, people will not be free to travel public roads without the fear and nuisance of encountering arbitrary and indiscriminate roadblocks. It is for this reason that I concur in Divisions 1, 2, and 4 of the majority opinion, but dissent to Division 3 and to the judgment.

LaFontaine's first enumeration raises the issue of the constitutionality of roadblocks established for the purpose of checking driver's licenses, vehicle registrations, and other motor vehicle violations.

Trooper Jackson of the Georgia State Patrol testified that at 10:00 a.m. on the morning of October 22, 1996, he was conducting a roadblock on Old Atlanta Road in order to detect "any violation of Georgia law, whatsoever," including violations of laws governing driver's licenses and mandatory insurance requirements. He added that he and his fellow officer stopped every car that approached the roadblock, and that that procedure was standard policy. The only evidence that supervisory personnel had any role in the roadblock in question was Trooper Jackson's testimony that a supervising officer had issued standing orders for field officers to conduct roadblocks, weather permitting. Trooper Jackson, however, testified that the field officers had complete discretion concerning where to locate the roadblock. The record thus demonstrates that the field officers had the discretion to control the time, the place, and the duration of the roadblock, and that the only limitation on their discretion was that they had to stop each vehicle.

In determining whether a roadblock violates the Fourth Amendment to the United States Constitution, it is beyond dispute that "a Fourth Amendment 'seizure' occurs when a vehicle is stopped at a checkpoint."[1] The question then becomes whether the seizure was reasonable under the Fourth Amendment. This question is answered by balancing the State's interest, the effectiveness of the roadblock in advancing that interest, and the level of intrusion upon the individual driver's privacy.[2]

As for the first factor, I conclude that it is clearly satisfied in this case, as courts have uniformly and properly recognized that states have a significant interest in enforcing their motor vehicle laws regarding licensing, insurance, and registration.[3]

Further, as for the second factor of whether the roadblock advanced the public interest, the record is silent about the number of violations discovered during the roadblock in question. In *Sitz*, the Supreme Court concluded that the effectiveness prong of the balancing test was satisfied by empirical evidence that about 1.6 percent of drivers stopped were arrested for alcohol impairment.[4] The Court, however, did not hold that empirical evidence is required to demonstrate that roadblocks reasonably advance the state's interests, and other courts have refused to require such empirical evidence.[5] It is unnecessary in this appeal to resolve whether empirical evidence is required because I conclude that the third factor — the intrusion on individual liberty — tips the balancing test against the State.

Under the third prong of the balancing test, courts consider such factors as the duration of the stop, the intensity of the investigation, the fear and surprise in law-abiding motorists that may be raised by the stop, and the extent to which the roadblock is left to the discretion of field officers.[6] The latter factor is determinative in the present case. As for that factor, many courts have agreed that for roadblocks to be constitutionally reasonable, it is imperative that they be established by supervisory personnel in order to avoid the arbitrariness that is possible if the time, location, manner, and duration of the

---

[1] *Michigan Dept. of State Police v. Sitz*, 496 U. S. 444, 450 (110 SC 2481, 110 LE2d 412) (1990).

[2] *Sitz*, 496 U. S. at 450 (stating that the balancing analysis set forth in *Brown v. Texas*, 443 U. S. 47, 50-51 (99 SC 2637, 61 LE2d 357) (1979), was the relevant test for determining the constitutionality of roadblocks).

[3] See *Simmons v. Commonwealth of Virginia*, 380 SE2d 656, 658 (Va. 1989); *Delaware v. Prouse*, 440 U. S. 648, 658 (99 SC 1391, 59 LE2d 660) (1979); *State v. Larson*, 485 NW2d 571, 572 (Min. 1992).

[4] *Sitz*, 496 U. S. at 454-455.

[5] E.g., *State v. Loyd*, 530 NW2d 708 (Iowa 1995).

[6] *Sitz*, 496 U. S. at 451-453; *United States v. McFayden*, 865 F2d 1306, 1312-1313 (D.C. Cir. 1989); *Simmons*, 380 SE2d at 658-659.

stops are left to the discretion of officers in the field.[7] As the Supreme Court of Virginia stated in *Simmons*:

> To avoid constitutionally impermissible infringements on privacy, the roadblock must be carried out pursuant to a plan or practice which is explicit, contains neutral criteria, and limits the conduct of the officers undertaking the road-block. Such a plan serves to insure that one's "reasonable expectation of privacy is not subject to arbitrary invasions solely at the unfettered discretion of officers in the field."[8]

The Court in *Simmons* rejected the contention that all that was necessary to make a roadblock constitutionally reasonable was for the police officers conducting the stop to stop every vehicle subject to the roadblock. The Court held, instead, that the roadblock had to be "undertaken pursuant to a specific plan or practice" that controlled the discretion of the officers in the field.[9] The Court found it fatal to the constitutionality of the roadblock that "the decision to establish the roadblock, as well as its location and duration was solely within the discretion of the troopers," and that "[n]o advance approval or authorization from any supervisor or superior officer was required to set up the roadblock."[10]

This position is consistent with one of the core concerns of the Fourth Amendment — "to assure that an individual's reasonable expectation of privacy is not subject to arbitrary invasions solely at the unfettered discretion of officers in the field. To this end, the Fourth Amendment requires that a seizure . . . must be carried out pursuant to a plan embodying explicit, neutral limitations on the conduct of individual officers."[11] The same concern is echoed in the Court's opinion in *United States v. Martinez-Fuerte*,[12] in which the Court analyzed the constitutionality of permanent immigration checkpoints operated by the Border Patrol. The Court stated that

---

[7] See *State v. Sanchez*, 856 SW2d 166, 169-170 (Tex. Crim. App. 1993); *Simmons*, 380 SE2d at 658-659; *State v. One 1987 Toyota Pickup*, 447 NW2d 243, 246-248 (Neb. 1989); *State v. Loyd*, 530 NW2d at 712; *State v. Downey*, 945 SW2d 102, 109-111 (Tenn. 1997); *Campbell v. State*, 679 S2d 1168, 1170-1172 (Fla. 1996); *People v. Wells*, 608 NE2d 578, 581-582 (Ill. App. 3rd Dist. 1993); *United States v. McFayden*, 865 F2d at 1312-1313 (D.C. Cir. 1989); *Larson*, 485 NW2d at 572-573.

[8] *Simmons*, 380 SE2d at 658 (quoting *Brown v. Texas*, 443 U. S. 47, 51 (99 SC 2637, 61 LE2d 357) (1979)).

[9] Id. at 658-659.

[10] Id. at 659.

[11] (Citations omitted.) *Brown v. Texas*, 443 U. S. at 51.

[12] *United States v. Martinez-Fuerte*, 428 U. S. 543, 559 (96 SC 3074, 49 LE2d 1116) (1976).

[t]he location of a fixed checkpoint is not chosen by officers in the field, but by officials responsible for making overall decisions as to the most effective allocation of limited enforcement resources. We may assume that such officials will be unlikely to locate a checkpoint where it bears arbitrarily or oppressively on motorists as a class.

In this same vein, a noted commentator has stated that

[q]uite clearly, the question of where and when a . . . roadblock is to be conducted should not be left to officers in the field. Rather, what is needed is that these roadblocks be "established by a plan formulated or approved by executive-level officers of the law enforcement agencies involved" which contains "standards . . . with regard to time, place" and similar matters. This is because "in the absence of record evidence that the decision to establish the roadblock was made by anyone other than the officers in the field, the roadblock in question has certain characteristics of a roving patrol," namely, an appreciable risk of arbitrary basis for the site and time decision.[13]

The foregoing discussions reflect the concern that few experiences are as fundamental to liberty and freedom as maintaining control over when, how, where and by whom we will be stopped and questioned. It is not reasonable to grant broad powers regarding matters of such critical importance to any and every law enforcement field officer. I conclude, therefore, that roadblocks must be conducted pursuant to a plan developed by supervisory personnel that establishes explicit, neutral criteria for all aspects of the roadblock, thus appropriately limiting the discretion of individual field officers, and protecting each person's fundamental right to be free from unreasonable invasions of privacy.[14]

Accordingly, in the present case, because the field officers had the discretion to control the time, the place, and the duration of the roadblock, and because the only limitation on the officer's discretion that is demonstrated by the record is that the officers had to stop each vehicle, I conclude that the roadblock violated the Fourth Amendment standard of reasonableness, and I thus would reverse

---

[13] (Footnotes omitted.) 4 W. LaFave, Search and Seizure: A Treatise on the Fourth Amendment, § 10.8 (d) at 697 (3d ed. 1996).

[14] To the extent that the Court of Appeals of Georgia has rejected the notion that control of a roadblock by supervisory personnel is a prerequisite to the constitutionality of the stop, see, e.g., *Mims v. State*, 201 Ga. App. 277, 279-280 (410 SE2d 824) (1991), I would overrule those cases.

the trial court's denial of LaFontaine's motion to suppress.[15]

I am authorized to state that Chief Justice Benham and Presiding Justice Fletcher join in this concurrence in part and dissent in part.

DECIDED MARCH 16, 1998 —
RECONSIDERATION DENIED APRIL 1, 1998.

*William C. Head,* for appellant.
*Leslie C. Abernathy, Solicitor, Alice B. Kamerschen, Robert F. Schnatmeier, Assistant Solicitors,* for appellee.

---

[15] Compare *State v. Swift*, 232 Ga. 535 (1) (207 SE2d 459) (1974), in which this Court approved a roadblock as constitutionally reasonable, but did not discuss the factors that led to that conclusion.