## S98A1306. BRENT v. THE STATE.
### (510 SE2d 14)

THOMPSON, Justice.

Following a bench trial, Brent was found guilty of DUI, less safe to drive. OCGA § 40-6-391 (a). He asserted, inter alia, that the roadblock stop which led to his arrest violated Art. I, Sec. I, Par. XIII of the Georgia Constitution. In *LaFontaine v. State,* 269 Ga. 251 (497 SE2d 367) (1998), this Court recently determined that police roadblock stops which are conducted in a reasonable manner do not violate the Fourth Amendment of the Federal Constitution. In this case of first impression we must decide whether the Georgia Constitution provides greater protection to citizens at police checkpoints than does the Federal Constitution. We now hold that roadblocks which comply with *LaFontaine* do not transgress the protections secured by the Georgia Constitution.

The evidence at trial showed the following: On May 17, 1997, after a discussion between Lt. Claborn, the traffic supervisor for the Rockdale County Sheriff's Department and his commander, Captain Middlebrooks, Claborn chose locations to implement roadblock stops. The locations were chosen pursuant to power granted by the Rockdale County Policy and Procedure Manual. Miller Bottom Road was one of the sights chosen for a roadblock. The decision to put a roadblock there was based on the location's historical propensity for traffic accidents.

The checkpoint stopped every driver, and asked them to produce their driver's license and proof of insurance. The checkpoint was marked by police cars with flashing lights, officers in uniform wearing reflective vests, and orange cones.

Brent was stopped at the Miller Bottom Road checkpoint around 11:00 p.m. by Deputy Ellington. Claborn was at the checkpoint, as was Middlebrooks for supervisory purposes. Ellington did not observe any erratic driving. Brent produced his license and insurance without incident, but Ellington detected the odor of alcohol and asked Brent to pull over and consent to field sobriety tests. Brent was not unsteady on his feet when walking about and did not slur his words or have bloodshot eyes. However, Brent tested positive for alcohol on the alco-sensor, and he failed all six parts of the horizontal gaze nystagmus (HGN) test. During the heel-to-toe test, Brent used his arms to steady himself and at times did not properly place his heel to his toe on a couple of steps. During the 30-second stand test, Brent did not put his foot down or hop, but he swayed and had to use his arms for balance. Ellington testified that in his opinion Brent had been under the influence of alcohol to the extent that he was less safe to drive.

1. The evidence is sufficient to enable a rational trier of fact to find Brent guilty beyond a reasonable doubt of DUI, less safe to drive. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); OCGA § 40-6-391 (a) (1). Commission of an unsafe act is not an element of that crime. *Apperson v. State*, 225 Ga. App. 804 (484 SE2d 739) (1997), citing *Moss v. State*, 194 Ga. App. 181 (390 SE2d 268) (1990); see also *State v. Tweedell*, 209 Ga. App. 13 (432 SE2d 619) (1993). Therefore, it was not incumbent upon the state to prove that Brent committed an unsafe act while he was behind the wheel. The evidence before the trier of fact was that Brent had alcohol on his breath, registered positive on the alco-sensor, failed all six parts of the HGN test, had substandard performances on the heel-to-toe and thirty-second stand tests, and, in the expert opinion of Deputy Ellington, was less safe to drive. A rational trier of fact may find guilt beyond a reasonable doubt from that evidence.

2. In *Michigan Dept. of State Police v. Sitz*, 496 U. S. 444 (110 SC 2481, 110 LE2d 412) (1990), the Supreme Court interpreted the Fourth and Fifth Amendments to permit roadblock stops. The stops need not be based on probable cause, but they must be conducted in a manner making them reasonable under the Fourth Amendment. Id. at 450. In *LaFontaine v. State*, supra, this Court adopted five factors as set out in *State v. Golden*, 171 Ga. App. 27 (318 SE2d 693) (1984), to determine when a roadblock stop is reasonable within the Fourth Amendment requirements.

> A roadblock is satisfactory where the decision to implement the roadblock was made by supervisory personnel rather than the officers in the field; all vehicles are stopped as opposed to random vehicle stops; the delay to motorists is

> minimal; the roadblock operation is well identified as a police checkpoint; and the screening officer's training and experience is sufficient to qualify him to make an initial determination as to which motorists should be given field tests for intoxication.

*LaFontaine,* supra at 253. This test establishes a well balanced compromise between citizens' right to travel free from governmental interference, and their countervailing right to effective law enforcement. We interpret the Georgia Constitution to strike the same balance between those competing rights.[1]

Relying on *Gary v. State,* 262 Ga. 573 (422 SE2d 426) (1992), Brent asserts that the Georgia Constitution has already been interpreted to give broader protection against searches and seizures than does the Federal Constitution. However, *Gary* did not broaden the definition of what constitutes an unreasonable search. Instead, it provided greater protection from unreasonable searches by interpreting OCGA § 17-5-30 as a legislative overruling of the judicially created good faith exception.

Brent also contends that the roadblock in question did not satisfy the *LaFontaine* criteria, and was therefore unconstitutional in any event. We disagree. The decision to implement the present roadblock was made by Lt. Claborn, a traffic supervisor, under the supervision of Captain Middlebrooks. Every vehicle that approached the roadblock was stopped. The delay and intrusion to motorists was minimal; the stop was limited to the amount of time it took drivers to produce their license and insurance. The checkpoint was identified by police cars, flashing blue lights, officers in uniform wearing reflective vests, and orange cones. All the officers at the checkpoint were trained to screen for motorists under the influence of alcohol. It follows that the roadblock comported with the five factor test adopted in *LaFontaine,* and that the detention and subsequent arrest of Brent were constitutional.

3. The trial court did not err in permitting Deputy Ellington to testify that in his professional opinion Brent was under the influence of alcohol to the extent that he was less safe to drive. A witness who shows he had the opportunity to observe the condition of another may testify whether that person was under the influence of alcohol. *Chance v. State,* 193 Ga. App. 242 (387 SE2d 437) (1989), citing *Lawrence v. State,* 157 Ga. App. 264 (277 SE2d 60) (1981). Furthermore,

---

[1] While the State of Georgia may choose to give its citizens greater protection from searches and seizures than the Federal Constitution, it is not required to do so. *Cooper v. California,* 386 U. S. 58, 62 (87 SC 788, 791, 17 LE2d 730) (1967); *Gary v. State,* 262 Ga. 573 (422 SE2d 426) (1992).

the officer may testify as to his opinion regarding the extent of intoxication of the individual. *Chance*, supra, citing *Fisher v. State* 177 Ga. App. 465 (339 SE2d 744) (1986). See also *Lewis v. State*, 214 Ga. App. 830 (449 SE2d 535) (1994). It is the officer's training and experience that makes the results of field sobriety tests meaningful. Without that expert interpretation the trier of fact is unable to evaluate the evidence properly before them. Thus, admitting Ellington's opinion testimony was a proper exercise of the trial court's discretion. See *Smith v. State*, 210 Ga. App. 451 (436 SE2d 562) (1993). Contrary to Brent's assertion, his stipulation that he was in control of his automobile is of no consequence.

*Judgment affirmed. All the Justices concur, except Benham, C. J., who dissents.*

SEARS, Justice, concurring.

I concur with the majority opinion. I write separately only to emphasize that the police roadblock in this case was carried out pursuant to a specific plan, and under sufficient supervision from superior officers. Because satisfactory safeguards existed in this case to prevent (1) the exercise of unfettered discretion by field officers, and (2) the arbitrary invasion of the privacy rights of individual drivers stopped at the roadblock, the concerns raised in my dissent to *LaFontaine v. State*, 269 Ga. 251, 255-256 (497 SE2d 367) (1998) are not implicated in this case.

I am authorized to state that Presiding Justice Fletcher joins in this concurrence.

BENHAM, Chief Justice, dissenting.

Because I cannot agree that the majority opinion has properly interpreted Art. I, Sec. I, Par. XIII of the Georgia Constitution as being exactly coextensive with the Fourth Amendment of the U. S. Constitution, I must dissent.

" 'A State is free as a matter of its own law to impose greater restrictions on police activity than those the Supreme Court holds to be necessary upon federal constitutional standards.' [Cit.] Thus, 'the State has power to impose higher standards on searches and seizures than required by the Federal Constitution if it chooses to do so.' [Cit.]" *Gary v. State*, 262 Ga. 573, 574 (422 SE2d 426) (1992). The present case presents a circumstance in which this Court should declare that freedom from unreasonable search and seizure in Georgia includes freedom from intrusive police roadblocks, seizures of the person which are not limited by the warrant requirement that applies to other seizures of the person in this State. "Uncontrolled search and seizure is one of the first and most effective weapons in the arsenal of every arbitrary government." *Brinegar v. United*

*States*, 338 U. S. 160, 180 (69 SC 1302, 93 LE 1879) (1949) (Jackson, J., dissenting).

Several other states have stood up for their citizens and refused to follow the U. S. Supreme Court in the direction of abandoning the requirement of individualized suspicion which has been a hallmark of Fourth Amendment jurisprudence. Subsequent to the decision in *Michigan Dept. of State Police v. Sitz*, 496 U. S. 444 (110 SC 2481, 110 LE2d 412) (1990), cited in the majority opinion, the Supreme Court of Michigan, in *Sitz v. Dept. of State Police*, 506 NW2d 209 (Mich. 1993), held that police sobriety checkpoints violated Michigan's own constitutional guarantee of freedom from unreasonable search and seizure because they departed from that state's traditional requirement of particularized suspicion to support stopping a car. The lack of suspicion as an element necessary to justification of a warrantless stop has prompted several other states to find sobriety roadblocks violative of state constitutional guarantees. See *Ascher v. Commr. of Public Safety*, 519 NW2d 183 (Minn. 1994); *Pimental v. Dept. of Transp.*, 561 A2d 1348 (R.I. 1989); *State v. Church*, 538 S2d 993 (La. 1989); *State v. Henderson*, 756 P2d 1057 (Idaho 1988); *State v. Boyanovsky*, 743 P2d 711 (Or. 1987).

The intrusiveness of roadblocks has also been cited as a basis for objection to them. In *State v. Koppel*, 499 A2d 977, 981 (N.H. 1985), the New Hampshire Supreme Court required that the State, in order to justify a roadblock, must show that it "significantly advances public interest in a manner that outweighs the accompanying intrusion on individual rights." Because Georgia has a proud history of protecting the right to privacy, being the first state to find such a right in its constitution (*Pavesich v. New England Life Ins. Co.*, 122 Ga. 190 (50 SE 68) (1905)), this Court should safeguard the right of persons in Georgia to be free of the unreasonable intrusions occasioned by traffic stops which are not based on any suspicion of wrongdoing. One means of establishing appropriate safeguards would be to require that roadblocks be authorized by a judicial officer upon a showing that the placement and organization of the roadblock maximizes the effectiveness while minimizing the intrusiveness. The legislatures of New Hampshire and Utah have done so, enacting statutes requiring judicial approval of roadblocks. See N.H. Rev. Stat. Ann. § 265:1-a (Supp. 1996); Utah Code Ann. §§ 77-23-101 to 77-23-105 (1995). Whether that is accomplished judicially or legislatively (as was the case in *Gary*, supra), the continuing enjoyment of individual liberties under the Constitution of this State depends on maintaining limits on the power of the police to interfere with the lives of Georgians when no reasonable suspicion of wrongdoing exists. As the Oklahoma Court of Criminal Appeals noted, sobriety roadblocks established by the police, "while commendable in their ultimate goal of removing

DUI offenders from the public highways, draw dangerously close to what may be referred to as a police state." *State v. Smith*, 674 P2d 562, 565 (Okla. Crim. App. 1984). The majority's holding that the Georgia Constitution does not provide any more protection against roadblocks not based on suspicion than does the U. S. Constitution leaves the people of this State in danger of the curtailment of dearly held liberties. For that reason, I must dissent.

DECIDED NOVEMBER 16, 1998.

*Robert W. Chestney, Michael M. Hawkins,* for appellant.
*Cheryl F. Custer, District Attorney, Mirza Q. A. Baig, Assistant District Attorney,* for appellee.