## A98A1651. WORKMAN v. THE STATE.
### (510 SE2d 109)

ELDRIDGE, Judge.

Following a bench trial in the State Court of Rockdale County, Judy Workman was found guilty of two counts of driving under the influence of alcohol (less safe driver and excessive blood/alcohol content) and one count of violation of the open container law. She appeals, challenging the trial court's denial of her motion to suppress based upon: (1) a non-verbatim reading of the implied consent notice; and (2) the State's failure to show that the roadblock's initial, screening officer had a "reasonable, articulable suspicion" to divert her car to the side of the road for further questioning. We affirm Workman's conviction.

Workman was stopped at approximately 3:00 a.m. on New Year's day at a roadblock set up at the intersections of McCalla and Salem Roads in Rockdale County. An initial, screening officer asked Workman for her license and proof of insurance. The officer then asked Workman to move her car to the side of the road, out of the flow of traffic. The screening officer informed a roadblock investigative officer that Workman "had possibly been drinking." For this reason, the investigative officer immediately approached Workman's car to question her. When she exited the car upon request, Workman stumbled. When asked if she had consumed alcohol, Workman stated she had been dancing at a local bar, and she admitted to drinking two beers. The investigative officer testified that he smelled alcohol on Workman's person, Workman's eyes were red and watery, and her speech appeared to be slightly slurred.

Upon request, Workman refused to blow into an alco-sensor, but participated in other field sobriety tests, including the horizontal gaze nystagmus. Based on the results of these tests, the investigative officer placed Workman under arrest and read her the implied consent warnings. A partly empty bottle of champagne was found in Workman's vehicle. A State-administered breath test showed a .13 blood-alcohol concentration. *Held*:

1. Workman contends that since the arresting officer did not read the implied consent notice verbatim, the trial court erred in admitting the results of her breath test into evidence.

In the court below, Workman contended that the arresting officer did not read the implied consent notice *at all*. The arresting officer testified that he did. The trial court found as a matter of fact that "[t]he proper implied consent rights were read to Defendant by the arresting officer in a timely manner at the time of arrest."

"Where an entirely different objection or basis for appeal is argued in the brief which was not presented at trial we will not consider that basis as we are limited to those grounds presented to and ruled upon by the trial court." (Punctuation omitted.) *Godfrey v. State*, 227 Ga. App. 576, 577 (2) (489 SE2d 364) (1997). See also *State v. Mayo*, 235 Ga. App. 107 (508 SE2d 475) (1998) (holding that a verbatim reading of the implied consent notice is not required).

2. Raising a Fourth Amendment issue, Workman contends that the State failed to present evidence that the initial, screening officer had a "reasonable articulable suspicion" of criminal conduct so as to permit a "secondary detention" of Workman's car.

Significant in this claim of error are the issues which are *not* being challenged: (1) Workman specifically does *not* challenge the constitutional configuration of the roadblock[1] or the propriety of her stop at the roadblock; (2) specifically, Workman does *not* raise a challenge to the initial, screening officer's experience and ability to detect alcohol impairment; and (3) Workman does *not* challenge the actions of the investigative/arresting officer.

Workman's enumeration of error is narrowly drawn. She contends *only* that, after being properly stopped at the roadblock, the initial screening officer's diversion of her car to the side of the road required an evidentiary showing of "reasonable and articulable suspicion of criminal conduct to permit a secondary detention."

Thus, framed as a constitutional issue, this enumeration of error provides this Court with an opportunity to examine a *screening* officer's role in relation to the stop of a motorist pursuant to a properly configured roadblock. Compare our decision in *State v. Fischer*, 230 Ga. App. 613 (497 SE2d 79) (1998) wherein an evidentiary issue was before the Court. Such examination must necessarily be con-

---

[1] "[T]he decision to implement the roadblock was made by supervisory personnel rather than by the officers in the field; all vehicles were stopped, leaving no discretion to the officers as to which vehicles to stop; the delay experienced by passing motorists was minimal; the operation was well identified as a police checkpoint; and the 'screening' officer's training and experience were sufficient to qualify him to make an initial determination as to which motorists should be given field tests for intoxication." *Evans v. State*, 190 Ga. App. 856, 857 (380 SE2d 332) (1989). Accord *Brent v. State*, 270 Ga. 160, 161 (2) (510 SE2d 14) (1998).

ducted in light of the recent Supreme Court of Georgia cases of *Brent v. State*, 270 Ga. 160 (510 SE2d 14) (1998), and *LaFontaine v. State*, 269 Ga. 251, 252-253 (497 SE2d 367) (1998).

"The State can practice preventative therapy by reasonable road checks to ascertain whether man and machine meet the legislative determination of fitness." (Citation and punctuation omitted.) *LaFontaine v. State*, supra at 252-253; *Brent v. State*, supra at 160. See also *United States v. Martinez-Fuerte*, 428 U. S. 543 (96 SC 3074, 49 LE2d 1116) (1976). Further, properly configured roadblocks that are set up for the purpose of detecting drivers who are under the influence of alcohol are valid under both the United States Constitution and the Constitution of the State of Georgia. *Michigan Dept. of State Police v. Sitz*, 496 U. S. 444 (110 SC 2481, 110 LE2d 412) (1990); *Brent v. State*, supra at 161-162 (2).

Case law makes it clear that "a Fourth Amendment 'seizure' occurs *when a vehicle is stopped at a checkpoint.*" (Emphasis supplied.) *Michigan Dept. of State Police v. Sitz*, supra at 450. And, as a part of a proper roadblock detention, motorists may be diverted to a second inspection area for questioning without the articulation of "reasonable suspicion" that would sustain a patrol stop. *United States v. Martinez-Fuerte*, supra at 547, 563-564 (finding that checkpoint stops were properly diverted to a second inspection area without "any articulable suspicion"). See also, e.g., *State v. Everson*, 474 NW2d 695, 701-702 (N.D. 1991). Moreover, as noted by the United States Supreme Court, since the intrusion in diverting a vehicle to a second inspection area is minimal, and "no particularized reason need exist to justify it, we think it follows that the . . . officers must have wide discretion in selecting the motorists to be diverted for the brief questioning involved." *United States v. Martinez-Fuerte*, supra at 563-564. See also *Michigan Dept. of State Police v. Sitz*, supra at 453 (holding that a temporary "sobriety checkpoint is for constitutional purposes indistinguishable from the checkpoint stops we upheld in *Martinez-Fuerte*").

Accordingly, after being stopped at the properly configured roadblock, Workman was not *more* "seized" by virtue of being diverted to the side of the road. Such is not a "second *detention,*" but a continuation of the original investigative stop and a part of the established operation of the roadblock. If the investigative stop was valid in the first place, which fact Workman concedes, briefly prolonging the investigation does not require added proof that the stop was valid. *Brent v. State*, supra at 162.

It is for this reason that, in Georgia, the challenge to a *screening* officer has always been to whether his "training and experience [are] sufficient to qualify him to make an *initial* determination as to which motorists should be given field tests for intoxication," which chal-

lenge Workman does *not* make in this case. (Emphasis supplied.) *LaFontaine v. State*, supra at 253; *State v. Golden*, 171 Ga. App. 27, 29-30 (318 SE2d 693) (1984). The focus on the screening officer's training implicitly contains the recognition of the realities of roadblock operation. A screening officer often does not have the time to develop "articulable suspicion" for each possible violator and to note such in writing for potential testimony at trial. The screening officer moves the traffic through the checkpoint in an attempt to cause the least amount of disruption for the majority of drivers. "Referrals are made for the sole purpose of conducting a routine and limited inquiry into [possible traffic violations] that cannot feasibly be made of every motorist where the traffic is heavy. The objective intrusion of the stop and inquiry thus remains minimal. Selective referral may involve some annoyance, but it remains true that the stops should not be frightening or offensive because of their public and relatively routine nature. Moreover, selective referrals — rather than questioning the occupants of every car — tend to advance some Fourth Amendment interests by minimizing the intrusion on the general motoring public." *United States v. Martinez-Fuerte*, supra at 560.

Thus, a screening officer's "training and experience" to divert traffic become the focus, not an individualized rationale for diverting any particular vehicle. *Brent v. State*, supra at 163-164 (3).

Here, Workman was properly stopped/"seized" at a roadblock set up on New Year's night to check license, insurance, and, obviously, to check for "driver[s] that might have been intoxicated." The roadblock was extremely busy. "Several vehicles around this time, right around three o'clock [a.m.], were being pulled off to the shoulder of the road. We had a string of cars up and down McCalla Road." Rather than let traffic back up, the initial, screening officer appropriately diverted Workman to a secondary area where the investigative officer immediately approached her. Thereafter, the investigative officer determined that Workman should be detained further for field sobriety tests, which determination Workman does not challenge. There was no Fourth Amendment violation.

Notably, this construction does not conflict with our decision in *State v. Golden*, supra. There, the detention which was referred to as a "secondary detention" was based upon the *receiving* officer's determination to detain the defendant for the *"purpose* of administering the field sobriety tests," not the *screening* officer's initial decision to divert the defendant's car for questioning. Id. at 30 (3). More importantly, "given the fact that the defendant had already been momentarily detained at the roadblock, the brief additional intrusion occasioned by asking him to get out of his vehicle to submit to the field sobriety tests must be considered minimal. Balancing the state's interest in enforcing its drunk driving laws against the individual's

right to be free from unwarranted governmental intrusion into his affairs, we thus hold that the administration of the tests did not violate the defendant's Fourth Amendment rights." *State v. Golden*, supra at 31. Accord *Brent v. State*, supra at 161-162 (2); *Seagraves v. State*, 212 Ga. App. 518 (2) (442 SE2d 312) (1994).

The Fourth Amendment prohibition against unreasonable seizures is not violated because a screening officer does not articulate a "reasonable suspicion" for diverting a motorist's car to a second area for questioning, after the motorist has already been legitimately stopped for investigative purposes at a properly configured roadblock. *United States v. Martinez-Fuerte*, supra at 563-564; *Brent v. State*, supra; *LaFontaine v. State*, supra; *Seagraves v. State*, supra at 518.

To the extent our otherwise correct evidentiary analysis in *State v. Fischer*, supra, may be read to conflict with the Fourth Amendment analysis contained herein and in *Brent v. State*, supra, we will overrule *State v. Fischer*.

In this case, "[Workman's] arrest was not the result of a [deputy's] whimsical decision to stop only [her] vehicle or an arbitrary scheme to single [Workman] out. The stop was made within the constitutional confines of a routine motorist roadblock . . . and [Workman's] ensuing arrest was the result of [her] personal decision to operate a motor vehicle while in an intoxicated state." *LaFontaine v. State*, supra at 253.

*Judgment affirmed. Andrews, C. J., McMurray, P. J., Pope, P. J., Johnson, P. J., Beasley, Blackburn, Smith, Ruffin, JJ., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED DECEMBER 3, 1998 —
RECONSIDERATION DENIED DECEMBER 17, 1998

*William Schneider*, for appellant.
*Cheryl F. Custer, District Attorney, M. Qader Baig, Assistant District Attorney*, for appellee.