## A02A0570. THE STATE v. SIMMONS.
(565 SE2d 549)

BARNES, Judge.

Charged with DUI, James Thomas Simmons successfully moved to suppress the results of his field sobriety evaluations and breath alcohol test. The State appeals, arguing that the arresting officer did not need additional articulable suspicion to ask Simmons to step out of his car after he was stopped at a roadblock. For the reasons outlined herein, we reverse.

Generally,

> [w]hen an appellate court reviews a trial court's order concerning a motion to suppress evidence, the appellate court should be guided by three principles with regard to the interpretation of the trial court's judgment of the facts. First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support [them]. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.

(Citation and punctuation omitted.) *Castillo v. State*, 232 Ga. App. 354, 355-356 (502 SE2d 261) (1998).

Where, as in this case, the evidence at the suppression hearing was uncontroverted, and there was no question regarding the credibility of witnesses, "we review the trial court's ruling on the motion to suppress to ensure that there was a substantial basis for it. The trial court's application of the law to the undisputed facts is subject to de novo review." (Citations, punctuation and footnotes omitted.) *State v. Bute*, 250 Ga. App. 479 (552 SE2d 465) (2001).

So viewed, the evidence presented at the motion hearing shows that on March 17, 2000, while working at a roadblock, a Lawrenceville police officer stopped Simmons and asked him for his driver's license and proof of insurance. Simmons produced his driver's license but was unable to locate his insurance card. The officer asked Simmons to move his car to the side of the road, out of the flow of traffic. The officer testified that during the initial stop, he detected the odor of alcohol coming from inside the car.

After Simmons pulled to the side of the road, the officer asked him to get out of the car and noticed that Simmons appeared "unsteady on his feet" when he was walking toward the rear of the car. He also noticed the smell of alcohol on Simmons' breath. When asked if he had been drinking, Simmons said that he had drunk four Bud Lite beers and his last drink was thirty to forty-five minutes earlier.

The officer asked Simmons to perform a series of field sobriety tests, including the horizontal gaze nystagmus, the walk and turn evaluation and the one-leg stand test. Simmons exhibited signs of impairment in each test. Simmons thereafter consented to an alcosensor test, which was positive for alcohol. The officer concluded that Simmons was a less safe driver and arrested him for DUI.

Simmons moved to suppress all evidence obtained as a result of the stop, arguing, among other things, that the roadblock was illegal and that the officers had no articulable suspicion of wrongdoing before stopping him. The trial court granted the motion to suppress, finding that, while the roadblock and initial stop were lawful, the officer lacked articulable suspicion to "effect a *Terry* seizure of the Defendant by removing him from his car following the initial roadblock stop." We do not agree.

"Case law makes it clear that a Fourth Amendment seizure occurs *when a vehicle is stopped at a checkpoint*. And, as a part of a proper roadblock detention, motorists may be diverted to a second inspection area for questioning without the articulation of 'reasonable suspicion' that would sustain a patrol stop." (Citations and punctuation omitted.) *Workman v. State*, 235 Ga. App. 800, 802 (2) (510

SE2d 109) (1998). And after being stopped at a lawful roadblock, Simmons does not become

> *more* "seized" by virtue of being diverted to the side of the road. Such is not a second detention, but a continuation of the original investigative stop and a part of the established operation of the roadblock. If the investigative stop was valid in the first place, . . . briefly prolonging the investigation does not require added proof that the stop was valid.

(Citation, punctuation and emphasis omitted.) Id.

Here, Simmons was stopped at a roadblock that was properly initiated by a supervisor to check licenses, insurance and car tags. He was diverted to the side of the road when he could not find his insurance card. The arresting officer noticed the odor of alcohol emanating from the car during the initial stop, and he also indicated that when Simmons was asked to step out of the car because he could not find his insurance card, he was unsteady on his feet and there was "an alcoholic odor on his breath."

While the trial court found that there was no articulable suspicion to ask Simmons to step out of the car, the officer had reasonable and articulable grounds at that point to believe that Simmons was engaged in the criminal activity of driving without proof of insurance.[1] The officer also smelled alcohol coming from the car. The brief additional intrusion occasioned by asking Simmons to get out of his vehicle, given the fact that he had already been momentarily detained at the roadblock, was minimal. *Workman,* supra, 235 Ga. App. at 803.

*Judgment reversed. Pope, P. J., and Ruffin, J., concur.*

DECIDED MAY 10, 2002 — 

*Gerald N. Blaney, Jr., Solicitor-General, Carole C. Korn, Gary S. Vey, Assistant Solicitors-General,* for appellant.

*Head, Thomas, Webb & Willis, Thomas J. Thomas,* for appellee.

---

[1] Under OCGA § 40-6-10 (a) (1), it is illegal to drive with no proof of insurance.