**FOURTH DIVISION**
**DOYLE, P. J.,**
**MCFADDEN and BOGGS, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**November 20, 2013**

# In the Court of Appeals of Georgia

A13A0941. SPRAGINS v. THE STATE.

BOGGS, Judge.

John Richard Spragins was stopped at a roadblock and arrested for driving under the influence of alcohol to the extent he was a less safe driver. Spragins filed a motion to suppress the evidence obtained as a result of the stop, arguing that the roadblock was unlawful. The trial court denied the motion, and following a bench trial, Spragins was found guilty and sentenced. He now appeals, challenging the trial court's denial of his motion to suppress. For the reasons explained below, we remand this case for the trial court to apply the Georgia Supreme Court's recent decision in _Brown v. State_, ___ Ga. ___ (Case No. S12G1287; decided October 21, 2013).

First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of

a jury and should not be disturbed by a reviewing court if there is any evidence to support it. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment. On numerous occasions the appellate courts of this state have invoked these three principles to affirm trial court rulings that upheld the validity of seizures.

(Citations, punctuation and footnote omitted.) *Miller v. State*, 288 Ga. 286, 286-287 (1) (702 SE2d 888) (2010).

The evidence reveals that Lieutenant LaChance with the Coweta County Sheriff's Office, a supervising officer who supervised seven traffic officers and was authorized to implement roadblocks, authorized a roadblock to take place during the late night hours of December 2, 2011. LaChance verbally instructed two deputies, who were trained to conduct roadblocks and field sobriety tests, to conduct the roadblock. He requested that they conduct the roadblock from 11:15 p.m. on December 2 to 2:00 a.m. on December 3, which was the end of the deputies' shift, but also told them they could end the roadblock when "they got tired of holding it or they got busy or it was unsafe to work it."

2

The deputies began the roadblock as instructed, and Spragins was stopped 18 minutes later and arrested for driving under the influence of alcohol to the extent he was less safe. The deputies concluded the roadblock at 12:30 a.m. Two days following the roadblock, on December 5, 2011, LaChance filled out and signed an "Approval to Initiate Road Check" form that listed the purpose of the roadblock, the date, the location, and that it took place from 11:15 p.m. on December 2 to 12:30 a.m. on December 3. The form also provided that all cars were to be stopped and that the order for the roadblock was communicated "in person." It also noted that "well identified police check point signs" were *not* utilized.

Spragins argues that the roadblock was illegally authorized, implemented and conducted pursuant to the unfettered discretion of field officers.[1]

> In examining the propriety of roadblock stops, the issue for resolution is not whether there was probable cause to stop the vehicle, but whether the roadblock stop was otherwise implemented and conducted in a manner as to demonstrate that the stop of the vehicle was "reasonable" under the Fourth Amendment. It has been held that police officials may set up highway roadblocks for the purpose of requiring motorists to display their driver's license, and that such a practice does not invade

---

[1]Spragins makes no argument with regard to the primary purpose of the roadblock. See *Brown*, supra, slip op. at 15-18 (2) (c).

3

their right to use the public ways free from unreasonable and unwarranted interception. Nor does such a practice constitute an unlawful arrest or restraint or an illegal search contrary to the United States Constitution. The State can practice preventative therapy by reasonable road checks to ascertain whether man and machine meet the legislative determination of fitness.

(Citations and punctuation omitted.) *LaFontaine v. State*, 269 Ga. 251, 252-253 (3) (497 SE2d 367) (1998).

A roadblock is satisfactory where the decision to implement the roadblock was made by supervisory personnel rather than the officers in the field; all vehicles are stopped as opposed to random vehicle stops; the delay to motorists is minimal; the roadblock operation is well[-] identified as a police checkpoint; and the "screening" officer's training and experience is sufficient to qualify him to make an initial determination as to which motorists should be given field tests for intoxication.

Id. at 253 (3).

Spragins contends that the roadblock was illegal because not all vehicles were stopped and the officers were not "advised or trained on any procedures to determine when a traffic backup constituted a safety hazard sufficient to temporarily halt the

4

roadblock."[2] He relies on a video recording of the stop in which the first deputy, Curtis, is shown questioning him, while a second deputy, Thompson, continues to conduct the roadblock alone. The video recording was made by Curtis' dash camera for the purpose of showing his interaction with Spragins. It recorded a portion of the intersection where the roadblock was conducted, but not the entire area, and at some points in the video, Thompson walks out of view of the camera. The video does, however, reveal that vehicles approached the roadblock area from four different directions.

Spragins argues that because Curtis testified that there was no traffic backup or safety concern that would have caused them to allow vehicles to pass through without being stopped, the deputies were not justified in randomly allowing some vehicles to pass the roadblock unchecked. But Curtis stated further that while there was no traffic backup to speak of, "[t]he only reason that you see vehicles going by there is because Deputy Thompson was by himself. That was after my contact with Mr. Spragins." Indeed, Thompson explained that he walked off-camera at some point in the video to speak with a motorist, and afterwards he waved some traffic through

---

[2]The evidence was undisputed that at the time Spragins was stopped, *all* vehicles had been stopped. So the roadblock clearly satisfied this element of the *LaFontaine* test at that time.

because "with just me in the road, that's just too big of a delay to the motorists for me to check all vehicles," which were approaching from several directions.[3] He testified that some vehicles were not stopped because of a lack of manpower - "[t]here was no one available." Thompson explained further that one vehicle failed to stop after he signaled for the vehicle to stop with his flashlight, and when asked whether he "simply let [another] car go through the roadblock," he responded "[t]hat could have been a vehicle we had already checked."

LaChance testified that there are several factors to be considered by the officers when deciding whether to wave traffic through:

> Was the traffic being backed up behind that vehicle and he waved it on through so there was no extended delay on motorists being stopped on the road? Was he in the road by himself? There are several different things. Was [he] and somebody else involved in a fight on the side of the road at the road check. There's numerous . . . things that could prevent every car from getting stopped.

---

[3]Curtis also testified that he and Thompson had to discontinue the roadblock, and that some vehicles went unchecked, while Spragins' vehicle was moved out of the roadway.

LaChance explained that while there is no "written policy about traffic backups," all vehicles are to be stopped in the absence of "other circumstances to prevent that from happening."

The trial court found:

> [t]he only discretion . . . which has to be given to officers in the field is when there is some type of motorist delay or lack of manpower, then all the vehicles cannot be stopped. It's just physically impossible and they only had two people there . . . it's sometimes impossible to stop every single vehicle especially when the officers are occupied.

It acknowledged that the video showed "three vehicles backed up. Two in one direction, one, one in the other and Deputy Thompson said he waved them through because it was too many for him to check at that point, he was by himself." The trial court found further that the deputies provided legitimate reasons to explain why some vehicles were not stopped. The court pointed to testimony that one of the vehicles stopped was off-camera and later proceeded through the roadblock, one vehicle failed to stop, and another vehicle appeared to proceed through the roadblock but in fact had been stopped for a significant time off-camera.

We have held that "[a]bsent some type of policy defining the options to supervisory personnel or else limiting the discretion of the officer in the field," a

roadblock was impermissibly based on the unfettered discretion of field officers to temporarily allow vehicles through the roadblock unchecked when "the police are busy and cannot tend to the people approaching." *State v. Manos*, 237 Ga. App. 699, 699-700 (516 SE2d 548) (1999). But here, the policy, albeit unwritten, authorized the deputies to allow vehicles to pass unchecked in the event of a lack of manpower resulting in extended delay to motorists.

The trial court concluded that some vehicles were waved through the roadblock because of a lack of manpower. The Georgia Supreme Court recently noted that sufficient staffing of a checkpoint is "relevant in evaluating all of the *LaFontaine* requirements." *Brown*, supra, slip op. at 37 (3) (c). The court held further that understaffing may "make it impossible to stop all vehicles while keeping the delay to law-abiding motorists minimal," and that two-officer staffing, while not necessarily a constitutional violation, can inhibit the State's "ability to show that the checkpoint was implemented and operated lawfully." Id. at 38-39 (3) (c). Because the trial court ruled without the benefit of the Georgia Supreme Court's recent ruling in *Brown*, we

remand this case for the trial court to reconsider its ruling on Spragins' motion to suppress in light of that holding.[4]

*Case remanded with direction. Doyle, P. J., and McFadden, J., concur.*

---

[4]Spragins also complains that the roadblock was illegal because LaChance did not "specify 'when' to implement the roadblock" and gave the field officers "no definitive 'end time' to conclude the roadblock." Because an analysis of the constitutionality of the roadblock on this ground necessarily relates to sufficient staffing, this issue should also be reconsidered on remand in light of the Georgia Supreme Court's holding in *Brown*.