A98A2171. ALBERT v. THE STATE.
(511 SE2d 244)

RUFFIN, Judge.

A Newton County grand jury indicted Eddie Laurence Albert for trafficking in cocaine, possession of a firearm during the commission of a felony, driving under the influence of marijuana and operating a motor vehicle with no proof of insurance. Following the denial of his motion to suppress, Albert waived his right to jury trial and the case was presented to the trial court based upon the evidence adduced at the motion to suppress hearing. After the State dead-docketed the no proof of insurance charge, the trial court found Albert guilty of trafficking in cocaine, possession of a firearm and driving under the influence of marijuana. Albert appeals, asserting in several enumer-

---

ations of error that the trial court erred in denying his motion to suppress and challenging the sufficiency of the evidence on the driving under the influence of marijuana conviction. Because Albert's arguments lack merit, we affirm.

1. "When reviewing a trial court's decision on a motion to exclude evidence, we must construe the evidence favorably to uphold the trial court's findings and judgment, and the trial court's findings must be upheld if any evidence supports them." (Punctuation omitted.) *McClain v. State*, 226 Ga. App. 714, 717 (1) (487 SE2d 471) (1997). So construed, the evidence shows that at 11:50 a.m. on December 17, 1994, Georgia State Patrol Troopers J. M. Welch and Dan Stephens decided to set up a roadblock at the intersection of Oak Hill Road and Magnet Road in Newton County. Welch testified that pursuant to department policy, a daytime roadblock required the presence of at least two law enforcement officers and that the roadblock be in a safe location where drivers have sufficient time to stop.

The officers parked their patrol cars near the intersection, and according to Welch, who stood on Oak Hill Road just past Magnet Road, the area was easily identifiable as a police checkpoint. The first vehicle to drive up was a white Blazer driven by Albert. Although Albert signaled to turn right onto Magnet Road, Welch waved him to the side of the road and asked to see his driver's license and proof of insurance. Upon looking into Albert's truck, Welch spotted a pistol on the passenger seat. In addition, Welch smelled a very strong odor of marijuana and noticed that Albert's eyes were red and glassy.

Trooper Stephens, who joined Welch, also smelled marijuana and performed a horizontal gaze nystagmus (HGN) test on Albert. Since Albert's response to the test suggested that he was impaired, Stephens escorted him from his Blazer to the patrol car. As they were walking toward the car, Stephens noticed a large bulge in the front pocket of Albert's pants and was concerned that Albert might have another weapon. As he patted Albert down for a weapon, Stephens heard the crackle of cellophane in Albert's pocket and felt what appeared to be powder. Stephens, suspecting that Albert had drugs in his pocket, pulled the pocket open and found a bag of cocaine.

At that time, Welch advised Albert that he was under arrest and read him his *Miranda* and implied consent rights. Welch testified that Albert refused to submit to a blood test, but that he did admit that he had smoked marijuana five minutes before arriving at the roadblock.

Welch then called a drug enforcement squad for additional assistance and was later joined by agent Ken Malcolm. The officers searched Albert a second time and found more crack cocaine in his

front jacket pocket. In total, the officers found 119.5 grams of cocaine on Albert.

Albert contends that the trial court erred in denying his motion to suppress based upon the illegality of the roadblock. As the Supreme Court recently noted, "[a] roadblock is satisfactory where the decision to implement the roadblock was made by supervisory personnel rather than the officers in the field; all vehicles are stopped as opposed to random vehicle stops; the delay to motorists is minimal; the roadblock operation is well identified as a police checkpoint; and the 'screening' officer's training and experience [are] sufficient to qualify him to make an initial determination as to which motorists should be given field tests for intoxication." *LaFontaine v. State*, 269 Ga. 251, 253 (3) (497 SE2d 367) (1998). However, these factors are not "absolute criteria which must be satisfied before a roadblock is legitimate." *Heimlich v. State*, 231 Ga. App. 662, 663 (500 SE2d 388) (1998). Rather, this Court looks to the totality of the circumstances surrounding the roadblock to determine whether the factors were satisfied. Id.

"In this case, all of the criteria set forth in *LaFontaine* were met. The roadblock was authorized and implemented by supervisory personnel under established criteria. Even though the field troopers had some discretion as to where and when to implement a roadblock, their discretion was clearly minimal in light of the [department policy] that a [daytime] roadblock could only be conducted when two uniform officers were present and when the weather was clear. There is no evidence of unfettered discretion by the field troopers and [Albert] made no showing that the roadblock was arbitrary or oppressive to motorists. [Albert's] arrest was not the result of a State trooper's whimsical decision to stop only his vehicle or an arbitrary scheme to single him out." (Citations and punctuation omitted.) *Heimlich*, supra at 664. Accordingly, Albert's detention at the roadblock did not violate his Fourth Amendment rights.

Albert relies on *Jorgensen v. State*, 207 Ga. App. 545 (428 SE2d 440) (1993) for the proposition that Trooper Welch, who was standing on Oak Hill Road, did not have authority to stop him from exercising his "absolute right to execute a lawful right turn onto Magnet Road." However, *Jorgensen* is distinguishable. In *Jorgensen*, a roadblock was set up 200 feet from the entrance to an apartment complex. One of the officers at the roadblock saw a BMW driven by Jorgensen pull into the apartment complex "in a normal fashion." Based only on his intuition that Jorgensen did not live there, the officer followed him into the complex, stopped him after he had already exited the car, and subsequently arrested him for driving under the influence. Since the stop was not made pursuant to the roadblock, but was made pursuant to the officer's whim, we held that the investigative stop was

not "justified by specific, articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct" in accordance with *Terry v. Ohio*, 392 U. S. 1, 27 (88 SC 1868, 20 LE2d 889) (1968). (Punctuation omitted.) *Jorgensen*, supra at 546.

Nothing in *Jorgensen* supports Albert's novel theory that a police officer working a roadblock cannot motion for cars to stop before they reach the exact point in the road where the officer is standing. Moreover, nothing in this case raises the concerns underlying our decision in *Jorgensen*. There is no indication that Welch had any vague "intuition" that Albert had committed a crime. Rather, Welch testified that he had no reason whatsoever to suspect Albert had committed any offense, but simply stopped Albert pursuant to the roadblock. Thus, the trial court did not err in denying Albert's motion to suppress.

2. Albert asserts that the officers did not have probable cause to arrest him for driving under the influence of marijuana, because the officers did not have sufficient evidence of his impairment. Thus, Albert argues that since the arrest was improper, the officers' search was improper as well. We find Albert's arguments unavailing.

" 'Probable cause need not be defined in relation to any one particular element, but may exist because of the totality of circumstances surrounding a transaction.' " *Norman v. State*, 214 Ga. App. 408, 409 (448 SE2d 219) (1994). Such an arrest "is constitutionally valid if, at the moment the arrest is made, the facts and circumstances within the knowledge of the arresting officers . . . were sufficient to warrant a prudent man in believing that the accused had committed or was committing an offense." *Callaway v. State*, 257 Ga. 12, 13-14 (2) (354 SE2d 118) (1987). "The same strictness of proof required for a finding of guilt is not necessary for probable cause." (Punctuation omitted.) *Singleterry v. State*, 227 Ga. App. 155 (1) (489 SE2d 42) (1997).

Here, the evidence shows that when Albert was pulled over, both Trooper Welch and Trooper Stephens noticed the odor of marijuana and the fact that Albert had red, glassy eyes. Welch noticed that Albert's speech was slurred. Stephens, who administered the HGN test, found that Albert exhibited four signs of impairment. After Albert failed the HGN test, he was arrested. Given the totality of the circumstances, the officers had probable cause to arrest Albert.

According to Albert, the HGN test cannot be used to establish probable cause since there was no evidence presented regarding the scientific validity of this test. However, as we held in *Hawkins v. State*, 223 Ga. App. 34 (476 SE2d 803) (1996), "the HGN test is an accepted, common procedure that has reached a state of verifiable certainty in the scientific community" such that a trial court does not err "in admitting evidence of the HGN test without first requiring expert testimony as a foundation for its admission." Id. at 38.

Albert further asserts that the HGN test cannot be used to establish probable cause that a person has ingested *marijuana*. In the past, we have recognized that the HGN test can be used to indicate whether the person tested demonstrates signs of impairment from either alcohol *or* drugs. *Hawkins*, supra; *Kerr v. State*, 205 Ga. App. 624 (423 SE2d 276) (1992); *Manley v. State*, 206 Ga. App. 281 (424 SE2d 818) (1992); *State v. Sumlin*, 224 Ga. App. 205 (480 SE2d 260) (1997) (physical precedent only). Moreover, we note that, without chemical testing (which Albert refused), Stephens had no way of confirming what substance Albert had ingested that was causing or contributing to the positive HGN test results.

In this case, the HGN test provided competent evidence that Albert was impaired by some substance. Although this evidence might not be sufficient to sustain a conviction for driving under the influence of marijuana, this sign of impairment together with red, glassy eyes and the smell of marijuana can be used to determine whether probable cause exists to arrest a person for driving under the influence.

Albert cites *Medders v. State*, 153 Ga. App. 680 (266 SE2d 331) (1980), for the proposition that the smell of marijuana is insufficient to establish probable cause. However, *Medders* only recognized that "there is some controversy as to whether or not the odor of burning marijuana by itself supplies sufficient probable cause for a search or an arrest." Id. at 681. In *Medders*, this Court concluded that the smell of marijuana was a factor that could be taken into consideration in determining whether there is probable cause to arrest. In any event, we need not determine whether the smell of marijuana alone is sufficient to establish probable cause since, in this case, there were other factors contributing to Albert's arrest, including his red and glassy eyes, his slurred speech, and the results of his field sobriety test.

We conclude that, given the totality of the circumstances, the police had probable cause to arrest Albert. See *LaFontaine*, supra. Consequently, the trial court did not err in refusing Albert's motion to suppress on this ground.

3. Albert challenges the sufficiency of the evidence for his driving under the influence of marijuana conviction. Albert cites *Brinson v. State*, 232 Ga. App. 706 (503 SE2d 599) (1998), for the proposition that his refusal to submit to a drug test is fatal to the State's case against him for driving under the influence of marijuana. According to Albert, the State must have scientific proof that he had marijuana in his blood or urine in order to prosecute him for a per se driving under the influence violation.

In *Brinson*, a police officer pulled Brinson over after the officer witnessed him drive over the centerline of the road. The officer testi-

fied, inter alia, that he smelled alcohol and marijuana, that Brinson's speech was slurred and that Brinson failed a field sobriety test. Nevertheless, the trial court, as the finder of fact, concluded that "the only evidence indicating that defendant was driving under the influence of drugs was defendant's refusal to submit to a State-administered drug test." We concluded that this evidence, alone, was not sufficient to convict Brinson for driving under the influence. *Brinson*, supra at 707.

Albert's reliance upon *Brinson* is misplaced. As an initial matter, *Brinson* is physical precedent only and, as such, is not binding authority. Court of Appeals Rule 33 (a). Moreover, in finding Albert guilty, the trial court did not rely solely on Albert's failure to submit to the drug test, as did the trial court in *Brinson*. Rather, in addition to Albert's refusal to submit to a state-administered drug test, the trial court found Albert guilty based upon the fact that, at the time of his arrest, Albert "smelled of marijuana; had red, glassy eyes; and admitted to having smoked marijuana just prior to driving to the road block."

It is well established that "refusal to submit to a [blood or urine] test itself may be considered as positive evidence creating an inference that the test would show the presence of the prohibited substance. OCGA § 40-6-392 (c)." (Punctuation omitted.) *Mendoza v. State*, 196 Ga. App. 627, 629 (2) (396 SE2d 576) (1990); *Bartnick v. State*, 203 Ga. App. 369 (416 SE2d 739) (1992); *Brooks v. State*, 187 Ga. App. 194 (369 SE2d 801) (1988). The majority in *Brinson* simply stated that "this evidence, alone, is insufficient to sustain [a] conviction of driving under the influence of drugs under the standard prescribed by *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) [(1979)]." *Brinson*, supra at 707. Pretermitting whether this non-binding statement in *Brinson* is correct, Albert's refusal to submit to the test is not the only evidence of his guilt in this case.

As set forth in OCGA § 40-6-391 (a) (6), it is unlawful to drive a vehicle if there is any amount of marijuana present in one's urine or blood. Since Albert smelled of marijuana, slurred his speech, admitted smoking marijuana, and refused to submit to testing to confirm the presence of marijuana, the trial court reasonably concluded that there was at least some marijuana present in his system. "Construed in favor of the verdict, the evidence was such that a rational trier of fact could have found proof of defendant's guilt beyond a reasonable doubt." *Mendoza*, supra at 629 (2).

4. Albert contends that the trial judge erred in failing to reconsider the rulings on his motion to suppress which was heard by another judge. However, Albert provides no new argument in support of this assertion, but merely reiterates his arguments in Divisions 1 and 2 of this opinion. For the reasons set forth in Divisions 1

and 2, Albert's contention lacks merit.

*Judgment affirmed. Pope, P. J., and Beasley, P. J., concur.*

DECIDED JANUARY 28, 1999.

*Strauss & Walker, John T. Strauss,* for appellant.

*Alan A. Cook, District Attorney, William K. Wynne, Jr., Assistant District Attorney,* for appellee.