A00A0139. THE STATE v. RUIZ.
(531 SE2d 418)

BLACKBURN, Presiding Judge.

The State appeals the trial court's grant of Juan Olivares Ruiz's motion to suppress approximately 40 kilograms of cocaine found in his car after Ruiz was stopped in a secondary roadblock and arrested for driving without a license. The State contends that, contrary to the decision of the trial court, the roadblock was reasonable and did not violate Ruiz's search and seizure rights. For the reasons set forth below, we agree and reverse the decision of the trial court.

When reviewing a trial court's decision on a motion to suppress, this court's responsibility is to ensure that there was a substantial basis for the decision. The evidence is construed most favorably to uphold the findings and judgment, and the trial court's findings on disputed facts and credibility are adopted unless they are clearly erroneous. Further, since the trial court sits as the trier of fact, its findings are analogous to a jury verdict and will not be disturbed if there is any evidence to support them.

(Citations omitted.) *Morgan v. State*, 195 Ga. App. 732, 735 (3) (394

SE2d 639) (1990).

Viewing the evidence in this light, the record reveals that, on the afternoon of March 13, 1998, Sergeant Martin, a supervisor for the City of Atlanta Police Department, authorized a roadblock on Browns Mill Road. As Sergeant Martin drove down Browns Mill Road on his way to the roadblock, which had already been initiated, he noticed that cars were turning left on Banberry Drive prior to reaching the checkpoint. At that time, Sergeant Martin called for two other officers, Merritt and Griffin, to establish a secondary roadblock on Banberry Drive in order "to catch the cars that [were] turning off from the roadblock" and "to see if they had [a] driver's license and insurance card."

After the second roadblock was operational, Ruiz approached the roadblock at Browns Mill Road, he made a sharp, sudden turn onto Banberry Drive without using his turn signal, and after seeing Merritt, he stopped his car approximately 20 yards away from the secondary roadblock on Banberry Drive. Merritt then approached Ruiz's car and asked for his driver's license and insurance card. Ruiz told Merritt that he had no license and gave the officer a false name and two dates of birth. Martin then approached, advised Merritt to place Ruiz under arrest for driving without a license, and began to do an inventory search of Ruiz's car prior to impounding it. Martin discovered a duffle bag in the back seat containing approximately nine kilograms of cocaine. Later, following the arrival of a drug dog which Martin requested after opening the duffle bag, an additional 31 kilograms of cocaine were found hidden in the side panels of the car. Ruiz was thereafter arrested for trafficking in cocaine. He was also cited for turning without using his turn signal.

On May 27, 1998, Ruiz filed a motion to suppress the cocaine found in his car, contending that the roadblock established on Banberry Drive was

> nothing more than a sham established as a pretext whereby law enforcement personnel could randomly stop and illegally detain motorists who, for whatever reason, turned left onto Banberry Dr. or legally made a U-turn at the intersection of Banberry Dr. and Browns Mill Rd.

The trial court, without any elucidation, found that the secondary roadblock was not properly established on Banberry Drive. We cannot agree.

> "In (*State v. Golden*), 171 Ga. App. 27 (318 SE2d 693) (1984) and *Evans v. State*, 190 Ga. App. 856 (380 SE2d 332) (1989), we addressed several factors in determining whether

the roadblocks which were there in issue were reasonable and constitutional. However, neither *Evans* nor *Golden* establishes absolute criteria which must be satisfied before a roadblock is legitimate. Indeed, in *Evans*, this Court looked at the totality of the circumstances surrounding the roadblock to decide whether the factors in *Golden* were satisfied. . . . Our Supreme Court, relying on *Golden*, has held that where the decision to implement the roadblock was made by supervisory personnel rather than the officers in the field; all vehicles are stopped as opposed to random vehicle stops; the delay to motorists is minimal; the roadblock operation is well identified as a police checkpoint, and the screening officer's training and experience [are] sufficient . . . , a roadblock is satisfactory and is within the constitutional confines of a routine motorist roadblock. *LaFontaine v. State*, 269 Ga. 251, 253 (497 SE2d 367) (1998)." (Punctuation omitted.) *Heimlich v. State*, 231 Ga. App. 662, 663-664 (500 SE2d 388) (1998). See also *Brent v. State*, 270 Ga. 160 (570 SE2d 14) (1998).

*Burns v. State*, 236 Ga. App. 3, 4-5 (1) (510 SE2d 865) (1999).

In examining the propriety of roadblock stops; the issue for resolution is not whether there was probable cause to stop the vehicle, but whether the roadblock stop was otherwise implemented and conducted in a manner as to demonstrate that the stop of the vehicle was "reasonable" under the Fourth Amendment. *Michigan Dept. of State Police v. Sitz*, 496 U. S. 444, 450 (110 SC 2481, 110 LE2d 412) (1990). See *Christopher v. State*, 202 Ga. App. 40 (1) (413 SE2d 236) (1991).

*LaFontaine*, supra at 252 (3).

In this case, the decision to implement the roadblock on Banberry Drive was made by Martin, a supervisor for the City of Atlanta Police Department. In addition, all vehicles that encountered the roadblock were stopped, and each driver was asked to produce a driver's license and insurance card. The officers participating in the roadblock were standing next to marked police vehicles in their patrol uniforms. They were also wearing orange traffic vests which had "POLICE" written across the front. Finally, it is undisputed that the officers involved had the appropriate training to check driver's licenses and insurance cards. Under the totality of the circumstances, this roadblock was reasonable.

Ruiz's argument that the police failed to use orange cones and

activate the blue lights on their vehicles does not change this result, as the roadblock was accomplished during daylight hours when the police and their cars were clearly visible.

> [A] daytime roadblock requires far less "identification" by way of lights and reflective gear than a roadblock at night. No need existed during this daytime roadblock for flashlights or flashing lights. The troopers were in uniform, and the patrol cars were clearly visible.

*Boyce v. State*, 240 Ga. App. 388, 390 (523 SE2d 607) (1999).

Ruiz also argues that the roadblock was a pretext. In analyzing the propriety of a roadblock,

> [t]he totality of the circumstances must show that the roadblock is not being used as a pretext to detain citizens in order to search their cars. *LaFontaine*, supra at 253 (3). And when viewing the totality of the circumstances, we must keep in mind that the relevant inquiry is whether the evidence shows that it was, in fact, a pretext to stop [an individual] driver, rather than a legitimate law enforcement technique. *Christopher*, supra at 42 (1).

*Boyce*, supra at 389.

Contrary to Ruiz's argument, there is no evidence that the police officers in this case were stopping motorists on a random basis. Here, the officers stopped every vehicle that approached the roadblock. Moreover, there is no evidence that the roadblock was set up as a pretext to stop Ruiz individually in order to search his car for drugs.

Further contending that the roadblock was invalid, Ruiz alludes to the fact that, prior to the roadblock, the police had completed a "reversal detail" at a drug location in the area, implying that it is improper for the police to set up a roadblock in areas where they know that drugs may be in use by drivers. A roadblock, however, is not unreasonable simply because it is set up in areas and at times which are likely to result in the detection of crimes. In an analogous case in which a driver was convicted for DUI, we found that a roadblock was not " 'unreasonable' and 'unconstitutional' because it was conducted at a time and place conducive to stopping potentially intoxicated drivers. [*Christopher*, supra at 41 (1); accord *Brimer v. State*, 201 Ga. App. 401, 402 (2) (411 SE2d 128) (1991).]" *State v. Stearns*, 240 Ga. App. 806, 808 (524 SE2d 554) (1999). Thus, a roadblock would not be unreasonable if it were set up in an area where it would be likely to find individuals who might be driving under the influence of drugs, as in this case.

This situation is not, as Ruiz has suggested, analogous to

instances where police officers chase cars which legally turn onto roads prior to encountering a roadblock. For example, in *Jorgensen v. State*, 207 Ga. App. 545 (428 SE2d 440) (1993), a roadblock was set up approximately 200 feet from the entrance to an apartment complex. The defendant in that case turned into the apartment complex, thereby avoiding the roadblock, without committing any traffic violations. An officer conducting the roadblock then followed the defendant into the apartment complex and stopped him simply because he did not think that the defendant lived there. We held that the stop in that case was improper, as it was based merely on the officer's hunch that the defendant was guilty of something.

In this case, to the contrary, Ruiz was never singled out to be stopped. Instead, he was stopped just like every other driver who approached the roadblock on Banberry Drive. As such, cases like *Jorgensen*, in which an individual driver was singled out and stopped merely for taking legal actions to avoid a roadblock, have no application to the matter at hand.

It is undisputed that Ruiz was driving without a license in violation of the law. He was stopped just like every other car at the roadblock set up on Banberry Drive, and, once he failed to produce a driver's license, he was appropriately arrested. Due to this arrest, his car was impounded, and an inventory search was conducted, resulting in the discovery of 40 kilograms of cocaine. This evidence, therefore, was properly discovered as a direct result of Ruiz's failure to produce a license, and it should not have been suppressed.

*Judgment reversed. Eldridge and Barnes, JJ., concur.*

DECIDED MARCH 17, 2000 —
RECONSIDERATION DENIED APRIL 3, 2000 — 

*Paul L. Howard, Jr., District Attorney, Alfred D. Dixon, David E. Langford, Elizabeth A. Baker, Assistant District Attorneys*, for appellant.

*Larry D. Wolfe, Bruce D. Harvey*, for appellee.