## A01A1090. BAKER v. THE STATE.
(556 SE2d 892)

MIKELL, Judge.

After a jury trial, Chris Baker was convicted of driving under the influence of alcohol to the extent that he was a less safe driver.[1] Baker appeals his conviction, arguing that the trial court improperly denied his motion in limine to exclude evidence gathered from a roadblock, erroneously admitted his alco-sensor test results, and incorrectly charged the jury on the horizontal gaze nystagmus ("HGN") evaluation. We reverse.

On appeal, "this court views the evidence in the light most favorable to support the verdict, and an appellant no longer enjoys a presumption of innocence." (Punctuation omitted.) *Dumas v. State,* 239 Ga. App. 210-211 (1) (521 SE2d 108) (1999). Further, "[w]here the evidence is uncontroverted and there is no issue as to witness credibility, . . . we review de novo the trial court's application of the law to the undisputed facts." *State v. Becker,* 240 Ga. App. 267, 268 (523 SE2d 98) (1999).

The uncontroverted evidence shows that on May 5, 2000, while working at a roadblock, Officer A. M. Wright stopped Baker and asked for his driver's license and insurance information. Officer Wright testified that he noticed that Baker's eyes were enlarged, a moderate odor of alcohol emanated from his breath, and his speech was very fast and "stutterish." Based on these observations, Officer Wright asked Baker to pull to the side of the road.

---

[1] OCGA § 40-6-391 (a) (1). Baker was acquitted of violations of OCGA § 40-6-391 (a) (2) and (4). Baker was also convicted of three other violations, none of which are pertinent to this appeal.

Responding to Officer Wright's instructions to recite the alphabet from "C" to "Q," Baker twice recited the alphabet from C to Z. Each time, Baker's recitation of the letters between C and Q was unintelligible. Officer Wright then told Baker to exit his vehicle and asked if he would perform several field sobriety tests. Baker agreed to do so.

The first test that Officer Wright administered to Baker was the HGN evaluation. Baker exhibited several clues of impairment. The next tests administered were the walk and turn test and the one-leg stand test. Officer Wright testified that four indicators on the walk and turn test suggest alcohol impairment, and Baker exhibited at least five. On the one-leg stand test, swaying and using one's arms to balance are the impairment indicators, and Baker exhibited both. Based on Baker's performance on these tests, Officer Wright concluded that Baker "was definitely under the influence of alcohol."

Officer Wright then offered Baker a preliminary breath test which he agreed to take. Despite Officer Wright's instructions to blow into the alco-sensor tube, Baker sucked on the tube instead. After Officer Wright explained the instructions again, Baker blew into the tube, and the results were positive for alcohol. Concluding that Baker was not a safe driver, Officer Wright arrested him.

1. During the hearing on Baker's motion to suppress all evidence gathered at the roadblock, Officer Wright testified that he was not present when one of his supervisors decided to implement the roadblock, and that he could not remember which of the two supervisors had made the decision. In light of this testimony and the fact that Officer Wright was the state's only witness, Baker contends that the state failed to prove the roadblock was lawful. Thus, he argues, his motion in limine seeking suppression of the evidence should have been granted. We agree.

*LaFontaine v. State*, 269 Ga. 251 (497 SE2d 367) (1998), articulates the factors to be considered in determining whether a roadblock is lawful. It provides,

A roadblock is satisfactory where the decision to implement the roadblock was made by supervisory personnel rather than the officers in the field; all vehicles are stopped as opposed to random vehicle stops; the delay to motorists is minimal; the roadblock operation is well identified as a police checkpoint; and the "screening" officer's training and experience [are] sufficient to qualify him to make an initial determination as to which motorists should be given field tests for intoxication.

Id. at 253 (3), citing *State v. Golden*, 171 Ga. App. 27 (318 SE2d 693) (1984). Baker argues that the state did not prove the first and last of

these five factors. The first factor must be examined in light of the recent decision by the United States Supreme Court in *City of Indianapolis v. Edmond*, 531 U. S. 32 (121 SC 447, 148 LE2d 333) (2000).

*City of Indianapolis v. Edmond*[2] recites the general rule that stopping a vehicle at a roadblock is a seizure, that only reasonable searches and seizures are allowed by the Fourth Amendment to the United States Constitution, and that seizures are usually unreasonable unless prompted by probable cause or by "individualized suspicion" of wrongdoing, i.e., by an articulable suspicion that the driver, or some other occupant of the particular vehicle stopped, has committed a crime. See *Edmond*, 531 U. S. at 37, 40, citing *Michigan Dept. of State Police v. Sitz*, 496 U. S. 444, 450 (110 SC 2481, 110 LE2d 412) (1990), and *Chandler v. Miller*, 520 U. S. 305, 308 (117 SC 1295, 137 LE2d 513) (1997). However, a series of decisions beginning in 1976 with *United States v. Martinez-Fuerte*, 428 U. S. 543 (96 SC 3074, 49 LE2d 1116) (1976), allowed an ever growing list of exceptions to the general rule. Among many exceptions were decisions validating roadblocks at or near a border to screen for illegal immigrants, *Martinez-Fuerte*, supra, and *United States v. Montoya de Hernandez*, 473 U. S. 531 (105 SC 3304, 87 LE2d 381) (1985). Additionally, *Sitz*, supra, validated the stopping of all traffic to remove impaired drivers from the road, and *Delaware v. Prouse*, 440 U. S. 648 (99 SC 1391, 59 LE2d 660) (1979), validated stops to check driver's licenses.[3]

All of these exceptions to the general rule were subject to additional procedural requirements imposed by appellate courts to attempt to ameliorate these deviations from the Fourth Amendment. Federal precedents required that the roadblock be conducted pursuant to a plan devised by supervisory personnel and not by officers in the field using their unfettered discretion. *Brown v. Texas*, 443 U. S. 47, 51 (99 SC 2637, 61 LE2d 357) (1979); *Martinez-Fuerte*, 428 U. S. at 559. Georgia precedents required, among other safeguards, that "the decision to implement the roadblock" be made by supervisory personnel rather than by officers in the field. See, e.g., *LaFontaine*, 269 Ga. at 253, citing *Golden*, supra.

Justice O'Connor, writing for the majority in *Edmond*, worried that the exceptions were threatening to absorb the general rule. She argued that some line must be drawn or "the Fourth Amendment

---

[2] *Edmond* was announced on November 28, 2000. Trial in the case at bar began on October 31, 2000, and judgment was entered on November 2, 2000. New rules for the conduct of criminal prosecutions must "be applied retroactively to all cases, state or federal, pending on direct [appeal] or not yet final. . . ." *Griffith v. Kentucky*, 479 U. S. 314, 328 (III) (107 SC 708, 93 LE2d 649) (1987).

[3] *Prouse* invalidated a discretionary, suspicionless spot check of a motorist's driver's license but suggested in dicta that "[q]uestioning of all oncoming traffic at roadblock-type stops" would be valid. 440 U. S. at 663 (VII).

would do little to prevent such intrusions [roadblocks] from becoming a routine part of American life." 531 U. S. at 42. The line drawn by O'Connor and her colleagues in *Edmond* was to invalidate roadblocks or checkpoints whose primary purpose is to uncover evidence of "ordinary criminal wrongdoing." 531 U. S. at 41, 42.[4] O'Connor's opinion in no way questions or diminishes the validity of the court's previous holdings in *Martinez-Fuerte* and *Sitz*. Moreover, the *Edmond* court asserted that the Fourth Amendment would "almost certainly" permit a roadblock "set up to thwart an imminent terrorist attack. . . ." 531 U. S. at 44.[5]

But the increased emphasis in *Edmond* on the primary purpose of a roadblock makes proof of a valid purpose a constitutional prerequisite to the admissibility of evidence seized at the roadblock. Moreover, because of the well-established rule that supervisory personnel, rather than officers in the field, must make the decisions implementing the roadblock, *Edmond* now requires us to focus on the primary purpose decreed by the supervisors. As *Edmond* explains in a somewhat Delphic manner, what is required is "an inquiry into purpose at the programmatic level." 531 U. S. at 46. Furthermore, "the purpose inquiry in this context is to be conducted only at the programmatic level. . . ." 531 U. S. at 48. Apparently, under the *Edmond* analysis, the purpose in the minds of the officers in the field, as evidenced by their testimony or their actual conduct at the roadblock, is not conclusive on the threshold issue of the supervisor's purpose. Paradoxically, "a program driven by an impermissible purpose may be proscribed while a program impelled by licit purposes is permitted, even though the challenged conduct may be outwardly similar." 531 U. S. at 47.

In the case at bar, the state attempted to prove, in response to a motion in limine, that the roadblock's primary purpose was to check for drivers operating vehicles under the influence of alcohol, a clearly valid purpose under *Sitz*. The evidence offered to prove the purpose was the testimony of the state's sole witness, Officer Wright of the Atlanta Police Department. Officer Wright testified that the purpose of the roadblock was "for DUI checks" and that the decision to set up the roadblock was made by "my supervisor of the evening." However, further examination revealed that Officer Wright did not remember

---

[4] The roadblock approved in the leading Georgia decision, *LaFontaine*, supra, might be invalid under the *Edmond* analysis. The primary purpose of the *LaFontaine* roadblock was to detect "any violation of Georgia law, whatsoever." (Punctuation omitted.) 269 Ga. at 254 (Sears, J., dissenting).

[5] See generally Allison, The Constitutionality of Drug Interdiction Checkpoints, 69 U. Cin. L. Rev. 671 (2001) (discussing circuit court decision in *Edmond*); Kellman, Biological Terrorism: Legal Measures for Preventing Catastrophe, 24 Harv. J. L. & Pub. Pol'y 417 (2001).

which supervisor was on duty and which supervisor decided to implement the roadblock. Wright was not present when the decision was made and "had not participated in [the roadblock] the entire time."

Wright's testimony establishes clearly that his purpose was "DUI checks." His actions that morning and the actions of the other officers on the scene were consistent with that purpose. But his actions are not conclusive evidence of the supervisor's purpose in implementing the checkpoint. Wright's precise testimony was:

Q. Thank you. Who called this roadblock?
A. My supervisor of that evening.
Q. And in which city and county was the roadblock held?
A. City of Atlanta, Fulton County.
Q. What was the purpose of this roadblock?
A. For DUI checks.

If this testimony is read as evidence of the supervisor's purpose, the testimony is hearsay. The testimony could be admitted as original evidence to explain the officer's conduct. OCGA § 24-3-2. But the statements would nonetheless be inadmissible to evidence the truth of the matters contained in the hearsay testimony. *Roger v. State*, 224 Ga. 436, 437 (162 SE2d 411) (1968). No objection was made to the evidence at the hearing. But hearsay, even if not objected to, proves nothing. *Results Oriented v. Crawford*, 245 Ga. App. 432, 439 (538 SE2d 73) (2000).

Moreover, the decision of the United States Supreme Court in *Edmond* has elevated proof of the supervisor's "primary purpose" to a constitutional prerequisite of a lawful checkpoint. We do not know from the transcript whether "DUI checks" were the purpose of the supervisor who decided to implement the roadblock or were the purpose of the officers in the field. The burden was on the state to prove that the seizure, i.e., the stopping of Baker's vehicle, was constitutionally valid. Under the guidance of *Edmond*, the required proof included evidence of the supervisor's primary purpose in implementing the roadblock. We will not presume from a silent record that constitutional requirements have been satisfied. *Bowers v. Moore*, 266 Ga. 893, 895 (471 SE2d 869) (1996). Because the required showing was not met, the trial court erred in not excluding evidence gained by the police at the roadblock. Therefore we must reverse the conviction.

Our decision today does not conflict with the most recent decision on the subject by our state Supreme Court. In *Lutz v. State*, 274 Ga. 71 (548 SE2d 323) (2001), there was evidence that the decisions of where and when to place the roadblock were made by supervisory personnel rather than field officers and the primary purpose was to examine driver's licenses and proof of insurance. Id. at 74 (3). The

roadblock was also to check for "other violations of Georgia law." Id. That secondary purpose seems valid under the dictum of the United States Supreme Court in *Edmond* where the majority opinion stated: "Our holding also does not impair the ability of police officers to act appropriately upon information that they properly learn during a checkpoint stop justified by a lawful primary purpose, even where such action may result in the arrest of a motorist for an offense unrelated to that purpose." 531 U. S. at 48.[6]

Our own court considered the *Edmond* decision last term in *Wrigley v. State*, 248 Ga. App. 387 (546 SE2d 794) (2001). *Wrigley* comports with *Edmond* because the error asserted was an allegedly improper purpose for the roadblock, detecting general criminal wrongdoing. We upheld the validity of the roadblock because the record revealed that its primary purpose was to check driver's licenses and insurance cards. *Wrigley,* 248 Ga. App. at 390 (2). *Edmond*'s emphasis on proof of the supervisor's purpose was not argued or addressed. Other of our decisions which comport completely with *Edmond* include *State v. Dymond*, 248 Ga. App. 582 (546 SE2d 69) (2001), and *Hodges v. State*, 248 Ga. App. 295 (546 SE2d 54) (2001). This court's seminal decision in *State v. Golden*, supra, carefully reviewed the United States Supreme Court decision in *Prouse*, supra, and *Martinez-Fuerte*, supra, and established the criteria later adopted by our state Supreme Court in *LaFontaine*. In *LaFontaine* and *Golden*, the decision to implement the roadblock was made by supervisory personnel rather than by officers in the field.

Although the holding of the Supreme Court of Georgia in *Lutz* and the holdings of our decisions mentioned above seem to comport with *Edmond,* several past decisions of our court are not in accord with *Edmond*'s insistence that supervisory personnel implement the roadblock for an acceptable primary purpose.[7] In a line of cases beginning with *Evans v. State*, 190 Ga. App. 856 (380 SE2d 332) (1989) (idea of the roadblock initiated by the field officers), and *Mims v. State*, 201 Ga. App. 277 (410 SE2d 824) (1991) (state trooper had prerogative to authorize roadblock), we adopted a "totality of the circumstances" test, which in effect allowed perfunctory compliance

---

[6] But see *New Jersey v. T. L. O.*, 469 U. S. 325, 341 (III) (105 SC 733, 83 LE2d 720) (1985) (search must be " 'reasonably related in scope to the circumstances which justified the interference in the first place' ").

[7] Permissible primary purposes are those which serve "special needs, beyond the normal need[s of] law enforcement," and include elimination of immediate, vehicle-bound threats to life and limb, e.g., sobriety checkpoints and driver's license examination, special circumstances such as border patrol checks near borders, and emergencies such as "an appropriately tailored roadblock set up to thwart an imminent terrorist attack or to catch a dangerous criminal who is likely to flee by way of a particular route." (Punctuation omitted.) *Edmond,* 531 U. S. at 37, 44.

with *LaFontaine* and *Golden* or, in some cases, no compliance at all. This laxity was allowed under the theory that the ultimate test was whether the stop was "reasonable" under the Fourth Amendment. See, e.g., *Albert v. State,* 236 Ga. App. 146, 148 (511 SE2d 244) (1999). The new guidance of *Edmond* indicates that perfunctory compliance will no longer suffice. Now the state must prove not only that the decision to implement the roadblock was made by supervisory personnel but also must prove what "primary purpose" motivated the supervisors.

The two dissents erroneously argue that our decision today would require the prosecution in each roadblock case to call a supervisor to testify to the roadblock's purpose. Instead, what we hold is that the state must present some admissible evidence, testimonial or written, of the supervisor's purpose, i.e., purpose at the "programmatic level," in the words of *Edmond.* In the case at bar, Officer Wright did not know which supervisor decided to implement the roadblock, nor was he present when the decision was made. The dissents' scholarly references to *Castell v. State*, 250 Ga. 776 (301 SE2d 234) (1983), and to Professor McCormick would be controlling if Officer Wright had testified as to the words spoken by his supervisor. However, neither "collective knowledge" of the field officers nor the actions of the officers on the scene are competent evidence of purpose at the "programmatic level."

Nor can we agree with the apparent premise of the dissents, based on our decision in *Heimlich v. State,* 231 Ga. App. 662 (500 SE2d 388) (1998), and its progeny, that the five factors of *LaFontaine* are not "absolute criteria." The factors in *LaFontaine* as modified by *Edmond* are not general guidelines but are minimum constitutional prerequisites. For example, the role of supervisory officers in implementing roadblocks and choosing the location is emphasized in several decisions of the United States Supreme Court. See, e.g., *Martinez-Fuerte*, 428 U. S. at 559; *United States v. Brignoni-Ponce*, 422 U. S. 873, 882-883 (95 SC 2574, 45 LE2d 607) (1975). We cannot evade the teaching of these controlling precedents by weighing the "totality of the circumstances." See, e.g., *Evans v. State*, 190 Ga. App. 856 (380 SE2d 332) (1989). See generally *LaFontaine*, 269 Ga. at 257, n. 14 (Sears, J., concurring in part and dissenting in part) ("To the extent that the Court of Appeals of Georgia has rejected the notion that control of a roadblock by supervisory personnel is a prerequisite to the constitutionality of the stop . . . I would overrule those cases.") (citation omitted). The "totality of the circumstances" test is applied only after it has been determined that the minimum constitutional standards discussed herein have been satisfied.

We must follow the United States Supreme Court's interpreta-

tion of Fourth Amendment requirements, and therefore we overrule the following decisions:[8] *State v. Sherrill*, 247 Ga. App. 708, 710 (2) (545 SE2d 110) (2001) (witness had "no personal knowledge of the supervising officer who actually authorized the roadblock, and the State was unable to come forward with this information at the hearing"); *Boyce v. State*, 240 Ga. App. 388 (523 SE2d 607) (1999) (field officer decided); *Albert v. State*, 236 Ga. App. 146, 147 (1) (511 SE2d 244) (1999) (although roadblock was established "pursuant to department[al] policy," decision to implement *this* roadblock made by field officers); *Payne v. State*, 232 Ga. App. 591 (502 SE2d 526) (1998) (witness did not know which supervisor made decision; no evidence of supervisor's primary purpose); *Heimlich*, 231 Ga. App. 662 (supervisor issued "standing order" permitting; field officers decided time and place); *Mims v. State*, 201 Ga. App. 277 (410 SE2d 824) (1991); and *Evans*, 190 Ga. App. 856. See generally *LaFontaine*, 269 Ga. at 257 (Sears, J., dissenting).

In summary, the constitutional validity of roadblocks in Georgia must now be decided in view of our controlling precedent, *LaFontaine*, as modified by *Edmond*. Read together those decisions prescribe that a roadblock is valid when (1) the record reflects that the decision to implement the checkpoint in question was made by supervisory officers and not officers in the field *and* that the supervisors had a legitimate primary purpose. The phrase "decision to implement" includes deciding to have this roadblock, and where and when to have it.[9] The evidence must also show that (2) all vehicles were stopped as opposed to random stops; (3) the delay to motorists was minimal; (4) the roadblock operation was well identified as a police checkpoint; and (5) the screening officer's training and experience were sufficient to qualify him to make an initial determination as to which motorists should be given field tests for intoxication.

The roadblock in the case at bar did not meet the first of the cri-

---

[8] In the following decisions, the defendant either did not challenge the lack of a supervisor's decision, conceded that point, or the evidence did show a proper decision and a proper primary purpose: *Wrigley*, 248 Ga. App. 387; *Dymond*, 248 Ga. App. 582; *Hodges*, 248 Ga. App. 295; *Loney v. State*, 245 Ga. App. 376 (537 SE2d 780) (2000); *State v. Ruiz*, 243 Ga. App. 337 (531 SE2d 418) (2000); *State v. Stearns*, 240 Ga. App. 806 (524 SE2d 554) (1999); *Martinez v. State*, 239 Ga. App. 662 (522 SE2d 53) (1999); *State v. Manos*, 237 Ga. App. 699 (516 SE2d 548) (1999) (roadblock invalid because not all cars stopped); *Burns v. State*, 236 Ga. App. 3 (510 SE2d 865) (1999) (trial court's ruling about supervisor not clearly erroneous); *Workman v. State*, 235 Ga. App. 800 (510 SE2d 109) (1998) (no challenge to "constitutional configuration" of roadblock); *White v. State*, 233 Ga. App. 276 (503 SE2d 891) (1998) (decision by supervisors for proper primary purpose).

[9] The precedents assume that supervisors will be "unlikely to locate a checkpoint where it bears arbitrarily or oppressively on motorists as a class." *Martinez-Fuerte*, 428 U. S. at 559 (IV) (B). See generally *LaFontaine*, 269 Ga. at 257 (Sears, J., dissenting), quoting *Martinez-Fuerte* and 4 W. LaFave, Search and Seizure: A Treatise on the Fourth Amendment (3rd ed. 1996), § 10.8 (d), p. 697.

teria listed above. Therefore the evidence should have been excluded, and the judgment is reversed.

2. Baker contends that the state did not prove that the officers who worked the roadblock were sufficiently trained to qualify as screening officers. *LaFontaine,* supra, directs us to focus on the qualifications of Officer Wright in this case because he determined that it was necessary to administer field sobriety tests to Baker. Officer Wright testified that he received his initial DUI training at the City of Atlanta Police Academy, as well as supplemental training in DUI detection. Furthermore, during his three and a half years as an officer, he made approximately 200 DUI arrests. Accordingly, we find that Officer Wright's training and experience were sufficient to qualify him to screen motorists for DUI. See *Wrigley,* supra (an officer with ten years of service who had made over 100 DUI arrests was sufficiently qualified to serve as a screening officer).

3. In his second enumeration of error, Baker contends that the trial court committed reversible error when it admitted his alco-sensor results without proof that the alco-sensor was an approved device. We disagree.

In *Lewis v. State,* 247 Ga. App. 440 (543 SE2d 810) (2000), an officer testified that the defendant's alco-sensor results were positive for alcohol. He also testified that the alco-sensor was approved by the Georgia Bureau of Investigation. We held that "[e]ven if we were to determine that [the officer's failure to specify that the device was approved by the Division of Forensic Sciences] was a material omission, there was still no reversible error." Id. at 441. The same result is warranted here.

Officer Wright testified that the alco-sensor was approved for use in the state, but he did not know who approved it. He also testified that Baker's alco-sensor result was positive for the presence of alcohol. Furthermore, as in *Lewis,* here, Officer Wright did not testify that the defendant "failed" the alco-sensor, and the state did not use the alco-sensor result as a measure of the defendant's blood alcohol level. Therefore, in light of Baker's testimony that he had been drinking that evening, the open container of beer between the driver's seat and the door, and Baker's performance on the other sobriety tests, "we conclude that it is highly probable that this alleged improper foundation did not affect the jury's verdict." (Citation omitted.) *Lewis,* 247 Ga. App. at 442. *Channell v. State,* 172 Ga. App. 156 (322 SE2d 356) (1984), upon which Baker relies, is inapposite because in that case, the officer testified that the defendant "failed" the roadside sobriety test. Id. at 157. There was no such testimony in this case.

4. Finally, Baker argues that the trial court's jury instruction on

the HGN evaluation was erroneous. The jury charge in question provided:

The HGN evaluation is based on the well-known and medically acceptable principle that a noticeable nystagmus can be caused by the ingestion of alcohol. The HGN evaluation is an accepted common procedure that has reached a state of verifiable certainty in the scientific community and is admissible as a basis upon which an officer can determine that a driver was impaired by alcohol.

Baker argues that by instructing the jury that the test had reached a "state of verifiable certainty," the court gave the evidence undue weight. We rejected this argument in *Waits v. State*, 232 Ga. App. 357 (501 SE2d 870) (1998), and again we hold that the charge is a correct statement of law. Id. at 360 (3). Accordingly, the trial court did not err in giving this charge.

Our decision in Division 1 of this opinion is dispositive and requires reversal of the conviction.

*Judgment reversed. Blackburn, C. J., Johnson, P. J., Smith, P. J., Ruffin, Barnes, Miller, Ellington and Phipps, JJ., concur. Pope, P. J., Andrews, P. J., and Eldridge, J., dissent.*

POPE, Presiding Judge, dissenting.

I must respectfully dissent from Division 1 of the majority opinion. I do not believe, as the majority holds, that the decisions of the U. S. Supreme Court or the Georgia appellate courts create a constitutional requirement that a police supervisor must testify as to the purpose of a roadblock.

In *City of Indianapolis v. Edmond*, 531 U. S. 32, 46 (121 SC 447, 148 LE2d 333) (2000), the U. S. Supreme Court directed that courts must "examine the available evidence to determine the primary purpose of the checkpoint program" at issue. And while the *Edmond* opinion directs that the inquiry "is to be conducted only at the programmatic level and is not an invitation to probe the minds of individual officers acting at the scene," id. at 48, nothing in that opinion, or any other Supreme Court opinion, dictates that only supervisory personnel may give evidence of the programmatic purpose of a roadblock. In fact, the *Edmond* opinion makes no mention of supervisors at all. Rather, we interpret the *Edmond* admonishment as directing that we look to the overall intended purpose of the roadblock, and not to the private motivations of the officers involved. And in doing so, the U. S. Supreme Court has directed us to "consider *all the available evidence* in order to determine the relevant primary purpose." (Emphasis supplied.) *Ferguson v. City of Charleston*, 532

U. S. 67, 81 (121 SC 1281, 149 LE2d 205) (2001).

In addition to the directives of the U. S. Supreme Court, we must also consider five factors established by our own Supreme Court for determining the propriety of a roadblock:

> A roadblock is satisfactory where [(1)] the decision to implement the roadblock was made by supervisory personnel rather than the officers in the field; [(2)] all vehicles are stopped as opposed to random vehicle stops; [(3)] the delay to motorists is minimal; [(4)] the roadblock operation is well identified as a police checkpoint; and [(5)] the "screening" officer's training and experience [are] sufficient to qualify him to make an initial determination as to which motorists should be given field tests for intoxication.

*LaFontaine v. State*, 269 Ga. 251, 253 (3) (497 SE2d 367) (1998). The majority now relies upon the first requirement — that the decision to implement the roadblock must be made by a supervisor — to add as a sixth requirement that only the supervisor may testify as to the purpose of the roadblock.

While *LaFontaine* relies upon evidence that a supervisor called for the roadblock as one factor in ensuring that a roadblock is not used as a subterfuge for an improper purpose, it does nothing to elevate the role of the supervisor for evidentiary purposes. Instead, the law in this state has always been that we look to the "totality of the circumstances" to determine whether the roadblock was legal. *Wrigley v. State*, 248 Ga. App. 387, 388 (1) (546 SE2d 794) (2001).

In applying this rule to the case before us, I would find that the evidence was sufficient to show that the primary purpose of the roadblock was to check for DUI violations. While the supervisor's testimony as to its purpose is one piece of evidence, it is not irrefutable. And perhaps one of the best pieces of evidence would be the orders conveyed to the officers actually implementing the roadblock. Whatever purpose may have been chosen or discussed by supervisors, it is the orders communicated to the officers that truly determine the purpose of the roadblock. The stated purpose dictates the procedures followed and the actions taken by those officers, whatever the true motivations of the supervisors may be.

Here, Officer Wright testified in response to a series of questions directed to him:

> Q. Thank you. Who called this roadblock?
> A. My supervisor of the evening.
> Q. And in which city and county was the roadblock held?
> A. City of Atlanta, Fulton County.

Q. What was the purpose of the roadblock?
A. For DUI checks.

Officer Wright thus explained the who, where, and why of the road-block. From the context of these questions, it can be inferred that he was testifying as to the official purpose communicated to him, and not as to his private motivations in participating in the roadblock. His testimony was therefore relevant evidence of the programmatic purpose of the roadblock.

It is immaterial that months later he could not recall which particular supervisor actually called the roadblock or that he was not present when the decision was made. While Officer Wright may not be able to testify as to what was discussed or decided by his supervisors, he can certainly testify as to what he was told as to the purpose for the roadblock. Thus, Officer Wright's testimony is not hearsay, but rather is direct evidence of the purpose communicated to the officers involved:

> Neither a hearsay nor a confrontation question would arise from use of testimony to prove merely that the statement had been made. The hearsay rule does not prevent a witness from testifying to what he has heard; it is rather a restriction on the proof of fact through extrajudicial statements. From the viewpoint of the Confrontation Clause, a witness under oath, subject to cross-examination, and whose demeanor can be observed by the trier of fact, is a reliable informant not only to what he has seen but also to what he has heard.

(Punctuation omitted.) *Castell v. State*, 250 Ga. 776, 779 (1) (b) (301 SE2d 234) (1983). See McCormick on Evidence (5th ed. 1999), Vol. 2, Ch. 24, § 249, p. 101.

The majority suggests that this analysis is not applicable because it asserts that Officer Wright did not testify as to the words spoken by his supervisor. But if Officer Wright was not testifying as to what had been communicated to him, his testimony cannot be classified as hearsay. His evidence would simply reflect his understanding of the purpose based upon his own observations and would be admissible. "Hearsay evidence is that which does not derive its value solely from the credit of the witness but rests mainly on the veracity and competency of other persons." OCGA § 24-3-1 (a). Whether Officer Wright was testifying as to the purpose communicated to him or as to the purpose he understood from his own observations, his testimony depended solely upon his own credibility.

Therefore, Officer Wright was competent to testify that the deci-

sion was made by a supervisor[10] and that it was intended for a legal purpose. That testimony, along with the evidence of the procedures followed at the scene, is sufficient to establish that the roadblock had the legitimate purpose of checking for possible DUI violators.

I am authorized to state that Presiding Judge Andrews joins in this dissent.

ELDRIDGE, Judge, dissenting.

Under *City of Indianapolis v. Edmond*[11] ("*Edmond*"), a DUI check is a permissible purpose for a roadblock.[12] Thus, *Edmond*'s "purpose inquiry" is inapplicable in this case. In fact, there is no constitutional issue in this case. Instead, this case involves purely an evidentiary issue. The majority concedes that the arresting officer on the scene testified that the purpose of the roadblock was "DUI checks" and that "his actions and the actions of the other officers on the scene were consistent with that purpose." The majority concludes, however, that there must be evidence that a *supervisor's* "primary purpose" for the roadblock was DUI checks. Because I disagree with this evidentiary ruling, I must respectfully dissent.

1. By combining (a) the *LaFontaine v. State*[13] ("*LaFontaine*") procedural criteria that the decision to implement a roadblock was made by supervisory personnel with (b) *Edmond*'s requirement that the purpose of a roadblock must be constitutionally permissible, the majority extrapolates a new "constitutional prerequisite": "*Edmond* has elevated proof of the *supervisor's* 'primary purpose' to a constitutional prerequisite of a lawful checkpoint." (Emphasis supplied.) The flaw in the majority's analysis, however, is the failure to distinguish between different constitutional burdens (read "prerequisites") and the manner of proof by which such burdens are met.

In roadblock cases, one "constitutional prerequisite" is the State's burden to show that the roadblock was not set up so as to create an "arbitrary interference" with motorists in violation of the Fourth Amendment.[14] The criteria in *LaFontaine* illustrate ways by which a State may prove procedurally that a roadblock was not set up in an arbitrary fashion:

[t]he decision to implement the roadblock at issue in this case was made by supervisory personnel rather than by the

---

[10] Indeed, Baker's counsel conceded that the state had proven that the roadblock was established by supervisory personnel.

[11] 531 U. S. 32 (121 SC 447, 148 LE2d 333) (2000).

[12] "It goes without saying that our holding today does nothing to alter the constitutional status of the sobriety . . . checkpoints that we approved in [*Michigan Dept. of State Police v. Sitz*, 496 U. S. 444 (110 SC 2481, 110 LE2d 412) (1990)]." Id. at 47.

[13] 269 Ga. 251, 253 (3) (497 SE2d 367) (1998).

[14] Id.

officers in the field, and the operation was carried out pursuant to specific, pre-arranged procedures requiring all passing vehicles to be stopped at the checkpoint and leaving no discretion to the officers in this regard. It is clear that the delay experienced by passing motorists was minimal, lasting only a minute or two unless a violation was noted, and that the operation was well identified as a police checkpoint.[15]

*LaFontaine*'s criteria are not "constitutional prerequisites" in and of themselves. Instead, they deal with proof of roadblock procedures in order to establish lack of arbitrary interference.[16]

*Edmond*, on the other hand, involves a different "constitutional prerequisite," i.e., the State's burden to show that the purpose of a roadblock seizure is constitutionally permissible. The proof by which the State demonstrates a constitutional purpose is articulated in *Edmond* as "we examine the available evidence to determine the primary purpose of the checkpoint program."[17] This is consistent with Fourth Amendment "totality of the circumstances" review.[18]

What the majority has done herein, however, is to select one of the *LaFontaine* procedural criteria that prove nonarbitrary interference, i.e., a supervisor made the decision to set up the roadblock at issue, and merge it with the *Edmond* "constitutional prerequisite" of permissible purpose. From this amalgamation, the majority concludes that the *LaFontaine* procedural criteria are a "constitutional prerequisite" which goes not to prove nonarbitrary interference, but to prove permissible purpose. I submit the springboard for that leap is nonexistent.

In fact, *Edmond* does not "modify" *LaFontaine*, as the majority asserts. The two cases have little to do with each other, except that both deal with roadblocks. Nonarbitrary interference à la the *LaFontaine* procedural criteria may be shown, yet a permissible purpose for a roadblock still goes unproved. Likewise, a constitutionally permissible purpose for a roadblock may be shown, while a nonarbitrary roadblock procedure goes unproved. *Edmond* and *LaFontaine* involve different constitutional burdens, and compliance with such burdens is proved by different evidence. Neither *Edmond* nor *LaFontaine*, nor both read together, creates a new evidentiary "constitutional prereq-

---

[15] *State v. Golden*, 171 Ga. App. 27, 29 (2) (318 SE2d 693) (1984), cited by *LaFontaine*, supra at 253 (review of the "circumstances" of the case).

[16] See *United States v. Martinez-Fuerte*, 428 U. S. 543, 559 (96 SC 3074, 49 LE2d 1116) (1976), cited by the majority (lack of arbitrariness shown when "official" chooses *location* of roadblock; field officer should not choose roadblock location).

[17] *Edmond*, supra at 46.

[18] *Holsey v. State*, 271 Ga. 856, 862 (524 SE2d 473) (1999); *Wrigley v. State*, 248 Ga. App. 387, 388 (546 SE2d 794) (2001).

uisite" that a *supervisor's* purpose for a roadblock program must be proved in order to prove the purpose of a roadblock.

Additional guidance is provided in the recent case of *Ferguson v. City of Charleston*[19] (*"Ferguson"*). In *Ferguson*, the Supreme Court further articulated the process that accompanies an *Edmond* evidentiary review of a "programmatic purpose." Indeed, the Court's opinion in *Ferguson* illustrates that, contrary to the majority's opinion, a review of "purpose at the programmatic level" includes a review of the application and implementation of the program and, thus, the program's ultimate effect. Citing *Edmond*, the *Ferguson* Court stated that "[i]n looking to the programmatic purpose, we consider all the available evidence in order to determine the relevant primary purpose."[20] The Court then went on to recognize that the *Ferguson* respondents' *stated* purpose for the involuntary seizure/urine screening program at issue was the benign goal of getting substance-dependent women into treatment for health reasons; however, the evidence of record showed that throughout the actual application and implementation of the program, the effect was "to generate evidence for law enforcement purposes."[21] Thus — again citing *Edmond* — the Court held that the programmatic purpose for the drug testing/involuntary seizure was unconstitutional, despite the benign purpose stated by respondents.

In an evidentiary application to the case at bar, as well as to other involuntary seizure/roadblock cases, it appears clear that, under *Edmond* and *Ferguson*, "all available evidence" demonstrating the programmatic purpose for a roadblock necessarily encompasses the field officer's understanding of the purpose for the roadblock program and his conduct in the "application and implementation" of the program. The issue is whether the roadblock stop was otherwise implemented and conducted in a manner as to demonstrate that the stop of the vehicle was "reasonable" under the Fourth Amendment.[22] We do not inquire into the motives of individual officers in performing stops; instead, we determine whether all the available evidence demonstrates that the roadblock detention objectively conforms to a constitutionally permissible purpose.[23]

Further, it would be illogical to find that the *supervisor's* primary purpose is a "constitutional prerequisite." Consider: if a super-

---

[19] 532 U. S. 67 (121 SC 1281, 149 LE2d 205) (2001), citing *Edmond*, supra.

[20] Id., 532 U. S. at 81.

[21] (Emphasis omitted.) Id. at 81-99.

[22] *Michigan Dept. of State Police v. Sitz*, supra at 450; *LaFontaine*, supra at 252; *State v. Ruiz*, 243 Ga. App. 337, 339 (531 SE2d 418) (2000).

[23] *Edmond*, supra at 48 ("[T]he purpose inquiry in this context is to be conducted only at the programmatic level and is not an invitation to probe the minds of the individual officers acting at the scene.").

visor testifies that the "primary purpose" of a roadblock was for a DUI check, but the officer manning the roadblock testifies that the purpose was for drug interdiction and that he asked drivers about drugs and weapons, the supervisor's testimony would be in dispute as "proof" of the roadblock's purpose under the totality of the circumstances, i.e., "the available evidence."[24] Surely the majority does not advocate that a supervisor's testimony about primary purpose is indisputable and cannot be disproved as pretext by contrary available evidence from the officers on the scene and/or their actions with regard to the implementation of the roadblock. "If this were the case, . . . law enforcement authorities would be able to establish checkpoints for virtually any purpose so long as they [articulate] a license or sobriety check. For this reason, we examine the available evidence to determine the primary purpose of a checkpoint program."[25] It follows that if a supervisor's testimony about an alleged "primary purpose" can be substantively *disproved* by other available evidence in contradiction, then the primary purpose of a roadblock can be substantively *proved* by other available evidence — with or without the supervisor's testimony. When the officers' understanding of a roadblock program and their conduct in effectuating that program demonstrate a constitutionally impermissible purpose for a roadblock detention, then the *supervisor's* primary purpose for the roadblock is irrelevant, as irrelevant as was the purpose articulated by the respondents in *Ferguson*. "Constitutional prerequisites" do not encompass irrelevant matters.

2. An officer's testimony that the purpose for a roadblock was to "check for DUI" is not hearsay. Such testimony is within the officer's personal knowledge as to a purpose he is effectuating at a roadblock. Such testimony need not go to a supervisor's purpose for the roadblock since, as discussed in Division 1, the supervisor's purpose is irrelevant if the effect of the roadblock, i.e., the field officer's conduct in applying and implementing the roadblock program, demonstrates a constitutionally impermissible purpose.

Further, the officer's testimony regarding the purpose for the roadblock is not hearsay any more than is an officer's testimony that the decision to implement the roadblock was made by supervisory personnel.[26] Both pieces of information are within the collective

---

[24] "[A] program driven by an impermissible purpose may be proscribed while a program impelled by licit purposes is permitted, even though the challenged conduct may be outwardly similar." *Edmond*, supra at 47.

[25] Id. at 46.

[26] *LaFontaine*, supra at 252 (3) (trooper testified that decision to implement roadblock was made by a State Patrol supervisor); accord, e.g., *State v. Dymond*, 248 Ga. App. 582, 583 (546 SE2d 69) (2001); *Martinez v. State*, 239 Ga. App. 662 (522 SE2d 53) (1999); *Hooten v. State*, 212 Ga. App. 770, 776 (442 SE2d 836) (1994); *O'Kelley v. State*, 210 Ga. App. 686, 687 (2) (436 SE2d 760) (1993); *Sapp v. State*, 188 Ga. App. 700 (374 SE2d 114) (1988).

knowledge of the officers who were called to the scene by their supervisor and ordered to work the roadblock and detain vehicles pursuant thereto.[27] The "collective knowledge" rule is applicable to factual situations where the collective knowledge of law enforcement officers has been relayed to and used by officers actually making or implementing a detention or seizure.[28] In this case, Baker conceded that the roadblock was properly implemented by a watch supervisor: "I'll concede that the State has satisfied that the roadblock was implemented by supervisory personnel, even though Officer Wright couldn't remember who."[29] Officer Wright was summoned to the roadblock by that supervisor: "My supervisor comes over the radio, gives his radio unit, have the following units meet with him at a certain location for a roadblock." The supervisor was present throughout the roadblock, and Officer Wright testified that the purpose of the roadblock was

> to detect the low level DUI as far as the actual type of a DUI person on the road that not everybody else is going to see, as far as the people that's — the low level type of people, where the average officer out on the side of the road could be behind him and not exactly detect him from the way he's driving, but actually still be considered a less safe driver.[30]

There is no hearsay issue with regard to Officer Wright's personal knowledge of the purpose of a roadblock he was executing under orders from his supervisor. Wright was the one actually effectuating the purpose.

I am authorized to state that Presiding Judge Andrews joins in this dissent.

DECIDED DECEMBER 3, 2001 — 

*Chestney-Hawkins Law Firm, Robert W. Chestney,* for appellant.

---

[27] *Burgeson v. State,* 267 Ga. 102, 105 (475 SE2d 580) (1996); *Brannon v. State,* 243 Ga. App. 28, 34 (530 SE2d 761) (2000); *Russell v. State,* 236 Ga. App. 645, 650-651 (4) (512 SE2d 913) (1999).

[28] *Burgeson v. State,* supra at 105; *Goodman v. State,* 255 Ga. 226, 229 (13) (336 SE2d 757) (1985).

[29] Officer Wright could not remember whether Lieutenant Charles or Sergeant Culberson called for the roadblock at issue, but one of the two called for it. See *State v. Sherrill,* 247 Ga. App. 708, 710 (545 SE2d 110) (2001) (officer's testimony that he reported to the roadblock at direction of superior and was under superior's supervision on site sufficient to establish first *LaFontaine* factor).

[30] Trial testimony can be considered on appellate review of the denial of a motion in limine. *State v. Brodie,* 216 Ga. App. 198, 199 (1) (c) (453 SE2d 786) (1995).

*Joseph J. Drolet, Solicitor-General, A. Dionne Allen, Katherine Diamandis, Assistant Solicitors-General*, for appellee.